Shirley **PERRY**, Plaintiff and Appellant,

v.

Charles E. **PERRY**, Defendant and Appellee.

Civ. No. 11021.

Supreme Court of North Dakota.

Feb. 20, 1986.

Richard J. Riha, Regional Child Support Enforcement Unit, Bismarck, for plaintiff and appellant.

Maury C. Thompson, Bismarck, for defendant and appellee.

GIERKE, Justice.

This is an appeal from an order of the District Court of Burleigh County. The order affirmed the findings of fact and recommendations of the referee which concluded that Charles E. Perry was not in civil contempt of court pursuant to § 27–10–03 of the North Dakota Century Code. We reverse and remand.

Shirley Perry and Charles E. Perry were divorced on October 17, 1980. Charles was ordered to pay child support of $125 per month per child for three children.

Shirley assigned her rights to child support to the Bismarck office of the Regional Child Support Enforcement Unit and they, in turn, attempted to enforce Charles's child support obligation. Shirley was receiving public assistance for the care of the three minor children.

In March 1984, the District Court of Burleigh County issued an order to show cause requiring Charles to appear and show cause why he should not be held in contempt of court for failure to comply with the judgment and to pay child support.

The order to show cause hearing was held in July of 1984. The referee made findings and recommendations which concluded that the matter should be continued until November of 1984. The district court, upon review, affirmed the referee's decision. Charles did not appear for the November 1984 hearing.

The second order to show cause hearing was held in April of 1985. The referee again made findings and recommendations. He found that Charles had an accumulated arrearage as of April 1, 1985, of $20,250, and that Charles was unable to make his child support payment but that he hoped to rectify this situation in the future.

The referee then recommended that Charles not be found in civil contempt of court and that Charles begin making child support payments no later than August 1, 1985. The referee also recommended that Charles report his employment status and income on a monthly basis to the clerk of court. As of the date of the oral argument for this appeal, Charles had not fulfilled any of these obligations. The district court again affirmed the referee's decision.

The primary issue on appeal is whether or not the court may find a civil contempt of court when an individual is voluntarily in a position whereby he cannot pay his court-ordered child support.

Section 27–10–03, N.D.C.C., describes what acts are punishable as civil contempt. Subsection 8 of § 27–10–03 provides:

*"27–10–03. Acts punishable as civil contempts.*—Every court of record of this state may punish as for a civil contempt any person guilty of a neglect or violation of a duty or other misconduct by which a right or remedy of a party to a civil action or proceeding pending in such court may be defeated, impaired, impeded, or prejudiced in the following cases:

.    .    .    .    .

"8. In any other case expressly authorized by the code or statutes of this state, or where an attachment, or any other proceeding to punish for a contempt has been usually adopted and practiced in a court of record to enforce a civil remedy or to protect a right of a party to an action or proceeding in such court."

Section 14–08–07, N.D.C.C., allows an adjudication of civil contempt for failing to pay child support. Charles failed to make child support payments as ordered by the court. He could have been adjudged to be in contempt of court, as contempt proceedings for failure to pay court-ordered child support are appropriate. *Kitchen v. Kitchen,* 304 N.W.2d 694, 697 (N.D.1981).

The record amply supports the position that Charles could seek and maintain employment which would allow him to meet his obligation for child support. In the record he admits that he could find employment which would provide a steady source of income.

Since 1979 Charles has waged a legal battle to regain his family farmland. The default judgment granted to Shirley award-

ed the farmland to her. Charles professes that his battle is to assure that Shirley and, thus, the children, have title to the farmland. This is a laudable goal, but possibly unrealistic as it would appear to be a long-range rather than a short-range goal.

In his efforts to accomplish this goal he has spent these last several years traveling throughout the country. During his travels he has apparently done paralegal work for financially troubled farmers. These farmers have provided him with a place to stay during his work for them and pocket money to reach the next farmer. Charles has involved himself in an effort to help other farmers avert the tragedy which has befallen his own farm. At the same time he has kept up his own fight for the family farmland. His motives may be altruistic in part; nevertheless, we cannot ignore that he has voluntarily placed himself in a position whereby he cannot pay child support.

■ A parent's duty to support his or her children is continuous and does not depend on his or her prosperity. *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D.1970). It is both a legal and a moral obligation. *Kinsella, supra.*

The record seems to indicate that Charles could find employment which would enable him to meet his child support obligation as imposed by the divorce decree. However, he has placed himself in a position which does not allow him to comply with the decree; it would appear from the record that he is unwilling to comply. *See Gross v. Gross*, 53 N.D. 480, 206 N.W. 793, 795 (1925).

Upon reviewing the referee's findings and recommendations we note that there is no discussion of Charles's unwillingness to comply. Rather, the record indicates that: (1) at the July 1984 hearing, the referee found that Charles was unable to pay child support; and (2) at the May 1985 hearing, the referee, no doubt because of Charles's sincere conviction that he could soon better the wrong, recommended no civil contempt and gave an August 1, 1985, date for child support repayment to begin.

■ We reverse and remand with the instruction that the district court make determinations not only as to Charles's ability to pay but also, and more importantly, as to what effort he has made to find employment or to secure an income in the reasonably near future which would make it possible to comply. In other words, the trial court should determine his willingness to comply. If it is concluded that Charles has voluntarily placed himself in a position where he cannot comply, then that is tantamount to a showing of unwillingness and civil contempt should be used to enforce the order.

ERICKSTAD, C.J., and MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, dissenting.

The issue before us does not concern Charles's duty to support his children. That issue has been decided and the decision is that he must pay monthly support. Rather, this appeal concerns the method of enforcing the support order.

The appeal was presented to us under the guise that the referee and the trial court were unaware that they could hold Charles in civil contempt even though his failure to pay the court-ordered child support was due to his voluntarily placing himself in a position where he was unable to do so. But the request for review of the referee's findings and recommendations made to the trial court on behalf of Shirley specifically concerned that matter. My review of the record does not lead me to believe that the trial court was operating under an erroneous concept of the law when it affirmed the findings and recommendations of the referee.

Unless this court is willing to hold, as a matter of law, that the trial court's findings are clearly erroneous and that it abused its discretion in failing to hold Charles in contempt for failure to pay the court-ordered child support, it appears to me that reversal and remand is futile. Furthermore, if the trial court finds Charles in contempt, as the majority opin-

ion appears to indicate it should, the punishment, including the amount of any penalty for the contempt, rests in the sound discretion of the trial court and a fine may be nominal. *Red River Valley Brick Corp. v. City of Grand Forks*, 27 N.D. 431, 146 N.W. 876 (1914).

I might agree that Charles's support of his children should be his first priority but there is sufficient evidence in the record indicating why, at this time, he did not make it to sustain the recommendation of the trial court. I would affirm the order of the trial court.