Eva Marie OLSON, Plaintiff
and Appellee,

v.

Gary Richard OLSON, Defendant
and Appellant.

Civ. No. 940020.

Supreme Court of North Dakota.

Aug. 24, 1994.

David R. Bliss (argued), Bismarck, for plaintiff and appellee.

William D. Schmidt (argued), of Wheeler Wolf, Bismarck, for defendant and appellant.

NEUMANN, Justice.

Gary Olson appeals from a divorce judgment ordering him to pay $500 monthly child support for his three children. We affirm.

Gary and Eva Olson were married in 1985 and had three children. During the marriage, Gary was a science teacher in the Glen Ullin public school district and worked additional jobs during the summers. In 1992, his gross income was $23,000. Gary took a two-week leave of absence from his teaching position in January 1993 because of marital difficulties, but he returned to finish the 1992–1993 school year. He was offered a contract for the 1993–1994 year, but he decided to quit teaching and did not sign his contract. Gary accepted a temporary seven-week position at the University of North Dakota during June and July 1993. In August 1993 he began his current job with Triebold Industries in Valley City, where he earns $5.00 per hour preparing dinosaur fossils and making casts and molds.

Eva commenced this divorce action in February 1993. The trial court ordered Gary to pay interim child support of $550 per month, based upon Gary's then-current net monthly income of $1,648.

The parties entered into a stipulated settlement of all issues except child support and income tax dependency exemptions. Trial was held in November 1993, after Gary had quit his teaching position and begun working at Triebold Industries. The trial court found that Gary had not quit teaching in bad faith or in an attempt to evade his child support obligation. The court also found that Gary's net monthly income at the time of trial was $689 per month, but that Gary had the capability of earning income sufficient to provide

$550 per month in support. The court ordered Gary to pay child support of $190 per month, the child support guideline amount for three children based upon $689 monthly income, until March 1994. Commencing with the April 1994 payment, the court ordered Gary to pay $500 per month.

On appeal, Gary asserts that the child support guidelines do not permit the court to base child support on earning capability rather than actual income, absent evidence of an intent to evade child support obligations.

Section 14–09–09.7, N.D.C.C., authorizes the Department of Human Services to promulgate child support guidelines and creates a rebuttable presumption that the amount of support designated in the guidelines is correct. *Montgomery v. Montgomery*, 481 N.W.2d 234, 235 (N.D.1992). The child support guidelines provide a schedule for an obligor's monthly payments based upon the obligor's net monthly income and the number of children for whom support is sought. *Rueckert v. Rueckert*, 499 N.W.2d 863, 869–870 (N.D.1993); Section 75–02–04.1–10, N.D.A.C.

Gary asserts that the guidelines are based upon an obligor's actual net income, and do not permit the trial court to impute to an obligor additional income that he is capable of earning. We have previously stated that the guidelines generally do not provide for imputing wages to an unemployed obligor. *See Heley v. Heley*, 506 N.W.2d 715, 722 (N.D.1993); *Guskjolen v. Guskjolen*, 499 N.W.2d 126, 128 (N.D.1993); *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 878 (N.D.1992). However, those cases did not involve an obligor with a well-developed earnings history who quit his job without good reason to take another, substantially lower-paying job while divorce proceedings were pending.

Although the guidelines do not specifically provide for imputing income to an unemployed obligor,[1] they do specifically recognize that a parent has a duty "to support children

to the extent of the parent's ability." Section 75–02–04.1–04, N.D.A.C. *See also Rueckert v. Rueckert, supra*, 499 N.W.2d at 869; *Guskjolen v. Guskjolen, supra*, 499 N.W.2d at 128. That language implicitly recognizes that a divorcing parent cannot reduce the amount of child support the parent is able to pay by quitting gainful employment or taking a substantially lower-paying job without good reason.

Our pre-guidelines caselaw clearly recognized similar principles. In *Perry v. Perry*, 382 N.W.2d 628 (N.D.1986), the record showed that the obligor could have obtained employment sufficient to meet his child support obligation. Instead, he traveled throughout the country, without pay, providing paralegal assistance to financially troubled farmers. Although acknowledging that his motives may have been altruistic, we held that he could not voluntarily place himself in a position whereby he was unable to pay child support. *Perry v. Perry, supra*, 382 N.W.2d at 630. We therefore reversed the trial court's refusal to hold him in contempt, holding that his voluntary lack of employment constituted an unwillingness to comply with the support order. *Perry v. Perry, supra*, 382 N.W.2d at 630. We subsequently cited *Perry* in *Hanson v. Hanson*, 404 N.W.2d 460, 466 n. 3 (N.D.1987), where we noted that "a spouse may not voluntarily place himself in a position which does not allow him to comply with the support provisions of a divorce decree, or voluntarily remain in such a position where the record indicates that he could find employment which would enable him to meet his support obligations."

In reinstating a child support obligation against the unemployed obligor in *Guskjolen v. Guskjolen, supra*, we also stressed the voluntary nature of the obligor's unemployment. Construing Section 75–02–04.1–06, N.D.A.C., which provides special rules governing hardship situations "over which the obligor has little or no control," we concluded

---

1. The problem in this case probably would not arise again under a proposed amendment to Section 75–02–04.1–07, N.D.A.C., that would impute income based on earning capacity when an obligor's actual income is less than 60 percent of "prevailing amounts earned in the community by persons with similar work history and job qualifications." As recently described by a member of

the guidelines committee, "[t]he key characteristics of this new addition are: 1) a presumption of 'underemployed', 2) exceptions to the presumption, 3) articulation of how the presumption may be rebutted, and 4) what level of income should be used if the presumption is not rebutted." Tina M. Heinrich, *The Guidelines, They Are A Changin'*, Gavel, June–July 1994, at 8, 9.

that the mother's decision to quit her job to stay at home with her newborn child was not a situation over which she had little or no control. *Guskjolen v. Guskjolen, supra,* 499 N.W.2d at 129.

In this case, Gary quit a well-paying, permanent teaching position to take a substantially lower-paying job. He has not advanced any medical, psychological, or other significant reason for the change. Even if Gary's reasons for accepting his new employment are altruistic, and not for the purpose of evading his child support obligations, we do not believe it was the intended result under the guidelines to allow an obligor with an established earnings history to drastically reduce his income, and thereby his ability to pay child support, upon a whim.

We do not mean to imply that a child support obligor is not free to change employment. Certainly there may be instances when medical, psychological, or other valid reasons will support a change. We can also envision situations where the parent accepts new employment at a lower current salary or seeks further education, if the potential for advancement and long-term security are improved. *See Schatke v. Schatke,* 520 N.W.2d 833 (N.D.1994). Nor do we imply that additional wages should be imputed to a parent who, during the marriage, has been unemployed or underemployed. However, parents have a legal and moral obligation to support their children. Section 14–09–08, N.D.C.C.; *Rueckert v. Rueckert, supra,* 499 N.W.2d at 867. As part of that obligation, a divorcing parent with a demonstrated ability to earn income and support his children at a certain level is expected to continue to do so unless he can demonstrate legitimate reasons for a change.

In effect, we are adopting a "rule of reason." If the obligor's voluntary change in employment and earnings is reasonable under all of the circumstances, including the best interests of the children, then additional income cannot be imputed based on earning capacity, and child support should be computed upon actual net monthly income. If, however, an obligor with an established earnings history voluntarily, without good reason, places himself in a position where he is unable to meet his child support obligations, income compatible with his prior earnings history may be imputed in calculating child support under the guidelines.

We conclude that the trial court did not err in considering Gary's earning capability, based upon his prior employment history during the marriage, in calculating child support under the guidelines. We affirm the judgment ordering Gary to pay $500 per month effective April 1994.[2]

LEVINE, MESCHKE and SANDSTROM, JJ., concur.

VANDE WALLE, C.J., concurs in the result.

---

**2.** The court apparently reached the $500 figure by considering what AFDC would provide to a nonworking parent with three children. Having determined that Gary had the capability of earning sufficient income to provide child support of $550 per month, the court should have ordered support at that level. However, Eva's counsel expressed satisfaction with the court's decision, and Eva did not appeal the judgment. An appellee who has not cross-appealed may not seek a more favorable result than she received in the trial court. *Board of County Commissioners v. Peterson Excavating, Inc.,* 406 N.W.2d 674, 677 (N.D.1987); *Tkach v. American Sportsman, Inc.,* 316 N.W.2d 785, 788 (N.D.1982).