Rudy SCHATKE, Plaintiff and Appellant,

v.

Gail SCHATKE, Defendant and Appellee.

Civ. No. 930367.

Supreme Court of North Dakota.

Aug. 24, 1994.

Wefald Law Office, Ltd., Bismarck, for plaintiff and appellant; argued by Robert O. Wefald. Appearance by Rudy Schatke.

Spaeth, Thelen, Dearstyne & Van Voorhis, Grand Forks, for defendant and appellee. No appearance. Submitted on brief.

NEUMANN, Justice.

Rudy Schatke appealed from an order denying his motion to amend a divorce judgment dividing the marital estate and awarding child support. We conclude the trial court abused its discretion in refusing to amend the judgment, and we reverse and remand for further proceedings.

Rudy and Gail were married in 1980 and have three children. They purchased a home in Michigan, North Dakota. After Rudy retired from the Army, he and Gail purchased a business, Schatke Enterprises, Inc., a combination bar and restaurant, which they have operated together for two years. During that time it has been their primary source of income.

In 1993 the court dissolved Rudy and Gail's marriage on the ground of irreconcilable differences. The trial was divided into two hearings, the first on November 13 and 24, 1992, following which the court found that both parties had the capacity and disposition

to provide love and care for the children, and awarded custody of the children and use of the family home in Michigan to Gail.

The second part of the parties' divorce trial was conducted on May 12, 1993. By memorandum dated July 13, 1993, and judgment entered August 10, 1993, the court awarded Gail property totaling $99,448 including the parties' home and business. The court awarded Rudy property with a value of about $59,114. The court also ordered "to more closely approximate the division of property" that Rudy receive a two year credit against paying child support. The court valued the credit at $600 per month ($200 per month per child) for a total credit of $14,400 over the two year period. The court further ordered that Rudy would be obligated to pay child support commencing in July 1995 "at the amount then applicable under the North Dakota Child Support Guidelines."

Acting pro se, Rudy filed a motion to amend the final judgment. The trial court treated it as a timely motion under Rule 59(j), N.D.R.Civ.P., but denied it. After securing counsel, Rudy filed an appeal from the denial of the motion to amend the judgment, but he did not appeal from the judgment itself.

■ The decision on a motion to amend a judgment under Rule 59(j), N.D.R.Civ.P., rests in the trial court's sound discretion and will not be reversed unless there is a manifest abuse of discretion. *Erdmann v. Rants,* 442 N.W.2d 441 (N.D.1989). A trial court abuses its discretion if it misinterprets or misapplies the law. *Id.*

Rudy asserts on appeal that the trial court's valuations of the parties' home and business are too low and that it was inequitable for the trial court to award Gail 63 percent, but Rudy only 37 percent, of the marital estate. Rudy also asserts that the child support credit was not computed in accordance with the child support guidelines. Rudy argues the credit is an erroneous attempt by the trial court to soften the disparity of the inequitable property division.

■ In dividing marital property the trial court must equitably distribute the parties' assets, and an equitable distribution can only be made if the trial court first determines the net worth of the assets. *McAdoo v. McAdoo,* 492 N.W.2d 66 (N.D.1992). Rudy contests the trial court's valuation of the parties' home and business.

■ The court valued the parties' home at $41,500, with an outstanding contract for deed balance of $10,954, resulting in a net value of $30,546. The court valued the business at $87,000, with a debt against the business of $47,000, for a total net value of $40,000. These values are clearly supported by the evidence in the record and will not be disturbed on appeal.

■ Rudy also complains that the property division is inequitable, because the property Gail received has substantially higher total value than the property awarded to Rudy. A property division need not be equal to be equitable, but a substantial disparity must be explained by the trial court. *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620 (N.D. 1994). The trial court's net property award to Gail of $99,448 compared to Rudy's net award of $59,114 constitutes a substantial, not a de minimis, disparity. *See Sateren v. Sateren,* 488 N.W.2d 631 (N.D.1992). The trial court offered the following explanation for the disparity:

"The above division of property gives the Defendant a greater proportion of the property, but she is awarded the property with the most speculative values, including a home and business in a small town, which may or may not be readily saleable in the future. Moreover, the success of the business will depend upon her own efforts to keep it going.

\* \* \* \* \* \*

"On the other hand, the Plaintiff is receiving almost all of the liquid cash assets. There is little or no risk of loss of these assets. The Plaintiff is an astute business person and he should be able to reinvest these funds...."

Our difficulty with this explanation is that the earning potential, risk of loss, and saleability of an asset normally is already included in the determination of the asset's value. The appraisal and evaluation of property is

not an exact science, and a court can properly consider the speculation inherent in the appraisal of a particular asset. However, if the liquidity or saleability of an asset was not sufficient to alter its valuation by the court, that factor by itself normally would not justify a large disparity in the total value of property distributed to each party. To rely on these characteristics as independent justification for a substantial disparity, after they already have been factored into the property's value, is to count them twice. While the court ought not to consider asset values and property distribution in a vacuum, *Heley v. Heley*, 506 N.W.2d 715 (N.D.1993), and therefore properly considered the speculative nature of the values it placed on the Schatke home and business, this consideration, without more, would fail to explain the $40,000 disparity in this property division.

In this case, however, there is more; there are the additional factors of Rudy's child support obligation and his plan to obtain additional education and training. The trial court stated:

"In order to more closely approximate the division of property, the Court will grant [Rudy] a credit for child support for the next two (2) years, commencing in July, 1993 and extending through the month of June, 1995. During that time, he shall *not* be required to pay any child support (or spousal support) to [Gail]. During each month of the two years, he shall be credited with a payment of child support equivalent to $200.00 per month per child, or a total of $600.00 per month. Over two years, that would amount to $14,-400.00. Child support will be payable, commencing in July, 1995, at the amount then applicable under the North Dakota Child Support Guidelines. Either party may schedule a motion at that time for the setting of child support so that the Judgment may be amended accordingly."

Gail claims on appeal that this "credit for child support" is not a form of property division or child support, but simply a "defer-ment" that does not have to be reduced to present value or computed according to the child support guidelines. We disagree. In effect, the trial court ordered Gail to pay $600 for 24 months to Rudy as property distribution installments, and ordered Rudy to pay an offsetting amount to Gail for child support.[1]

Standing alone, these property installments, totalling $14,400, would greatly reduce the disparity in the property division. *See Heley*, 506 N.W.2d at 718 (offsetting monetary award). However, because these payments were treated as prepayment of child support and never sent to Rudy, we must also determine whether Rudy's child support obligation was properly computed.

Section 14–09–09.7, N.D.C.C., authorizes the Department of Human Services to promulgate child support guidelines and creates a rebuttable presumption that the amount of support designated in the guidelines is correct. The child support guidelines provide a schedule of monthly payments based on an obligor's net income and the number of children for whom support is sought. Section 75–02–04.1–10, N.D.A.C. An obligor's net income is based on a projection of future income supported by the evidence presented to the court, including current wages or salary, Section 75–02–04.1–01(2), N.D.A.C., the use of property at a reduced or no charge, Section 75–02–04.1–01(3), N.D.A.C., and imputed income from assets, Section 75–02–04.1–07, N.D.A.C., as well as any other source of income recognized by the guidelines which the evidence might disclose.

■ After arriving at a child support amount determined through application of the guidelines, the court may find from a preponderance of the evidence, applying criteria referred to in Section 14–09–09.7(3), N.D.C.C., that the amount is insufficient. If that proves to be the case, the trial court may make a specific finding in compliance with Section 14–09–09.7(3), N.D.C.C., that the presumption has been rebutted, and may

---

1. Rudy argues that the trial court should have reduced these periodic property payments to present value when distributing the marital property. We normally would agree. *See Sateren v. Sateren*, 488 N.W.2d 631, 633 (N.D.1992). How-ever, assuming Rudy's child support obligation was properly computed, this error is harmless. The present value of Rudy's two-year child support obligation is also less than the $14,400 computed by the court.

impose a greater child support obligation based upon application of the criteria which rebut the presumption. A child support award is clearly erroneous if it departs from the guidelines and the court does not expressly find that the support amount established under the guidelines has been rebutted by a preponderance of the evidence. *Heley*, 506 N.W.2d at 721–722.

In this case, the trial court, finding that Rudy was attempting to rehabilitate his earning potential by enrolling in a two year respiratory care training program at St. Alexius in Bismarck, tried to help Rudy by not requiring him to make child support payments for two years. Unfortunately, the trial court, in its attempt to coordinate the property division and Rudy's child support obligation to fit the circumstances, failed to properly explain how it applied the child support guidelines to arrive at the $600 per month child support obligation.

An obligor must have a net income between $1,700 and $1,800 per month to owe that amount of support for three children. Section 75–02–04.1–10, N.D.A.C. The income Rudy should receive from the property awarded to him and the in-kind income he receives from living with his parents may partially explain the monthly income imputed to him. However, nothing in the evidence suggests that Rudy could earn $1,700 per month. We can speculate that the trial court may have relied on the parties' joint income tax returns to compute Rudy's future earning capacity, but even those do not appear to yield numbers that would result in a child support obligation of $600 per month.

■ Rudy argues that his child support obligation can only be based on his actual income. He claims that "the Trial Court has to take RUDY the way it finds him, and that is as a person who is unemployed and going to school." We disagree. The guidelines generally do not provide for imputing wages

to an unemployed obligor. *See Heley*, 506 N.W.2d at 722; *Guskjolen v. Guskjolen*, 499 N.W.2d 126, 128 (N.D.1993); *Spilovoy v. Spilovoy*, 488 N.W.2d 873, 878 (N.D.1992). However, "a spouse may not voluntarily place himself in a position which does not allow him to comply with the support provisions of a divorce decree, or voluntarily remain in such a position where the record indicates that he could find employment which would enable him to meet his support obligations." *Hanson v. Hanson*, 404 N.W.2d 460, 466 n. 3 (N.D.1987), *citing Perry v. Perry*, 382 N.W.2d 628 (N.D.1986). Implied in the guideline schedule and a parent's duty to support their children is the assumption that an obligor with a demonstrated ability to earn income and support his children at a certain level will continue to do so unless he can establish legitimate reasons for a change. *Olson v. Olson*, 520 N.W.2d 572 (N.D.1994).[2]

■ In an opinion filed today, we adopt a "rule of reason" for determining if an obligor's actual income is "reasonable under all of the circumstances," or if additional income should be imputed based on the obligor's earning capacity. *Olson*, 520 N.W.2d at 574. There is no question that Rudy could not return to work at the bar after it was distributed to Gail. The parties disagreed at trial, however, on whether Rudy voluntarily returned to school instead of obtaining suitable employment. With no evidence or findings on Rudy's reasonable earning capacity, including his actual earning capacity while attending school full-time, or whether Rudy's continued unemployment was voluntary or intentional, it was inappropriate for the court to order child support based on a monthly income of $1,700.

The court said it was giving Rudy a two year child support credit "to more closely approximate the division of property." The court's statement implies that the amount of

2. The problem in this case probably would not arise again under a proposed amendment to Section 75–02–04.1–07, N.D.A.C., that would impute income based on earning capacity when an obligor's actual income is less than 60 percent of "prevailing amounts earned in the community by persons with similar work history and job qualifications." As recently described by a member of the guidelines committee, "[t]he key characteristics of this new addition are: 1) a presumption of 'underemployed', 2) exceptions to the presumption, 3) articulation of how the presumption may be rebutted, and 4) what level of income should be used if the presumption is not rebutted." Tina M. Heinrich, *The Guidelines, They Are A Changin'*, Gavel, June–July 1994, at 8, 9.

the credit computed by the court may have affected its division of property between Gail and Rudy. If the court incorrectly computed the child support credit, then the property division may also have been affected. Under these unusual circumstances, the trial court must not only redetermine Rudy's child support obligation in accordance with the child support guidelines, it should also reconsider its division of the marital estate to ensure it has made an equitable division of the property, and it should adequately explain the substantial disparity, if one remains.

▮ Rudy also asserts on appeal that the trial court should reconsider its custody decision, because Gail is continuing a relationship with a male friend whose presence the court found was not in the children's best interests. At the second half of the bifurcated trial in this matter Rudy attempted to introduce incompetent hearsay evidence regarding the alleged relationship, but when asked, declined to move for a change of custody. By declining to make the motion, Rudy failed to raise the issue below and cannot raise it now for the first time on appeal.

The order of the court denying the motion to amend judgment is reversed, and the case is remanded for further proceedings.

VANDE WALLE, C.J., and SANDSTROM, J., concur.

MESCHKE, Justice, concurring.

I largely agree with the majority opinion, but I write separately to mark some differences. In my opinion, the only question to be resolved on remand should be Rudy's child support obligation while he chooses to attend school full-time, considering both his earning potential and substantial property resources. Only if his support obligation is below $600 per month need the trial court tinker with the property division.

I have not found a single case where this court has held that the "earning potential" or "liquidity" of an asset cannot be separately considered, besides for valuation, when equitably distributing marital property. To the contrary, we have repeatedly asked trial courts to consider all of the *Ruff-Fischer* factors when dividing property. *See Gaul-*

*rapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D. 1994); *Heley v. Heley,* 506 N.W.2d 715, 718 (N.D.1993), *citing Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966); *Pfliger v. Pfliger,* 461 N.W.2d 432, 437 (N.D.1990). These factors expressly include the parties' "financial circumstances as shown by the property owned at the time, its value at the time, [and] *its income-producing capacity....*" *McAdoo v. McAdoo,* 492 N.W.2d 66, 71 n. 1 (N.D.1992) (emphasis added), *quoting Weir v. Weir,* 374 N.W.2d 858, 862 (N.D.1985). The *Ruff-Fischer* factors contemplate that the characteristics of different kinds of property can properly be considered. *See also Wiege v. Wiege,* 518 N.W.2d 708, 711 (N.D. 1994) (*Ruff-Fischer* factors "include ... the liquidity or income-producing nature of the property distributed"); *Steckler v. Steckler,* 519 N.W.2d 23 (N.D.1994) (risks assumed under valuation of future pension benefits are properly considered); *Pankow v. Pankow,* 371 N.W.2d 153, 157 (N.D.1985) ("courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property").

In this case, I believe the trial court properly considered the nature of the property in making the division. In particular, the trial court was justified in recognizing that the business would no longer be operated by two owners and that a single owner would have more expense, less earnings, and consequently a potentially depressed value.

The trial court explained further:

While [Rudy] is rehabilitating his earning capacity, it is unknown whether [Gail] will stay in Michigan until the children have graduated from high school, and even beyond that date. Because of the property award made to [Gail], the Court will not award spousal support to the Plaintiff [sic], but will reserve jurisdiction over that question in the event that circumstances change in the future. Changed circumstances may occur in the event of a business failure or other economic hardship that may befall [Gail]. This is not anticipated at the present time since she is making approximately the same income

that the bar and restaurant generated before the divorce, but with only one of the parties there to run the business, the economic security provided by this asset may be tenuous.

That was a reasonable explanation.

On this record, Rudy's choice to return to college and remain unemployed, at his age, is voluntary. There is no evidence that he was unable to find employment. The trial court's carefully reasoned decision frees him to return to college to improve his earning potential, a worthy goal. But Rudy's complaint is that he should not be forced to support his three children, even if he has the earning ability and adequate resources to do so, because he is not working. I agree with the majority in rejecting this argument and in authorizing the trial court to apply the "rule of reason" that we adopted today in *Olson v. Olson*. Under that formulation, the trial court must make specific findings on whether the obligor's actual income is "reasonable under all of the circumstances," and on whether additional income should be imputed based on the obligor's earning capacity, as well as his earnings from marital property distributed to him.

In a case like this, I would go further and authorize the trial court to take into account, under the *Olson* "rule of reason," the amount of property available to Rudy while he attends college, beyond the direction of NDAC 75–02–04.1–01(2) for "income imputed from assets." Sensibly, that was the law before agency regulations governed the process.

> We have stated that the ability to pay [child] support is not necessarily determined solely on the basis of income earned. The court must consider a party's net worth, including the extent of his physical assets and his earning ability as demonstrated by past income.

*Burrell v. Burrell*, 359 N.W.2d 381, 383 (N.D. 1985) (citation omitted). *See also Skoglund v. Skoglund*, 333 N.W.2d 795, 796 (N.D.1983); *Cook v. Cook*, 364 N.W.2d 74, 76 (N.D.1985); *Gronneberg v. Gronneberg*, 412 N.W.2d 84, 95 (N.D.1987); *Gabel v. Gabel*, 434 N.W.2d 722, 724 (N.D.1989); *Illies v. Illies*, 462 N.W.2d 878, 881 (N.D.1990). After all, even wealthy dilettantes, who have never worked

and don't plan to do so, should owe as great an obligation of support to their children as working persons do. NDAC 75–02–04.1–04 specifies that a parent has a duty "to support children to the extent of the parent's ability."

In my opinion, therefore, on remand, the trial court need only determine Rudy's reasonable earning potential and make specific findings about the proper level of support under the "rule of reason," balancing the needs of the children with Rudy's ability and resources to support his children. In my view, only if the resulting support level is below the $600 per month already decreed must the trial court adjust the property distribution.

LEVINE, J., concurs.