Filed 12/7/00 by Clerk of Supreme Court

Modified Jan. 30, 2001

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 203

Judy M. Logan, f/k/a

Judy M. Bush, Plaintiff and Appellant

v.

John M. Bush, Defendant and Appellee

No. 20000090

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Lawrence A. Leclerc, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Maring, Justice.

Thomas Dayton Fiebiger, 15 Broadway, Suite. 206, Fargo, N.D. 58102-4907, for plaintiff and appellant.

Daniel E. Bertsch, Assistant State’s Attorney, Regional Child Support Enforcement Unit, P.O. Box 2806, Fargo, N.D. 58108-2806, for defendant and appellee.

Logan v. Bush

No. 20000090

Maring, Justice.

[¶1] Judy Logan appealed from an amended judgment modifying her child support obligation.  We affirm in part, reverse in part, and remand for further proceedings.

I

[¶2] Judy Logan and John Bush were divorced in 1990.  The parties were awarded joint custody of their three minor children, with physical custody alternating every three months.  An amended judgment was entered on January 31, 1994, granting custody to Bush with Logan to have summer visitation “not exceeding two months.”  Logan was ordered to pay child support as follows:

Plaintiff shall pay and the Defendant shall receive child support for the three minor children, in an amount of $758.00 per month.  Said payments will be prorated upon a ten month (10) period to reflect an average payment of $632.00 per month.  Payment of the amount in child support shall continue until the child attains the age of eighteen (18) years or if, upon attaining the age of eighteen (18) years, the child has not yet graduated from high school and continues to reside with Defendant, until the child’s graduation from high school, but in no event shall the child support obligation continue beyond the child’s nineteenth (19th) birthday.

[¶3] Logan remarried and moved to California, where her income increased  substantially.  The parties’ eldest daughter, Stephanie, turned eighteen in August 1997 and graduated from high school in May 1998.  Despite these changes in circumstances, neither party sought modification of the support provisions of the 1994 amended judgment, and Logan continued to pay child support based upon $758 per month.

[¶4] In 1999, Bush authorized the Regional Child Support Enforcement Unit to establish an appropriate support obligation.     On September 7, 1999, the State, on 

Bush’s behalf, brought a motion to amend the 1994 amended judgment and increase Logan’s child support obligation.  Logan responded by filing a motion for correction of judgment under N.D.R.Civ.P. 60(a), seeking a credit for child support paid on behalf of Stephanie Bush after May 1998.

[¶5] In September 1999, while the matter was pending, Logan’s husband quit his job in California and joined the active duty component of the Army Reserves.  He was assigned to Arizona.  Logan then quit her nursing job in California and moved to Arizona, where she accepted a lower paying nursing position.  When Logan left  California she was earning $30 per hour; her Arizona position paid $22 per hour.  Logan receives additional income as a member of the Army Reserves.

[¶6] A hearing was held before a referee on December 14, 1999.  The referee issued findings of fact and conclusions of law, ordering Logan to pay child support of $1,682 per month for the two minor children, based upon imputed income under N.D. Admin. Code § 75-02-04.1-07(9); concluding Logan was not entitled to an adjustment of support for extended visitation under N.D. Admin. Code § 75-02-04.1-08.1; and concluding Logan was not entitled to a credit for alleged overpayment of support for Stephanie after May 1998.  The district court affirmed the referee’s findings of fact and conclusions of law, and a second amended judgment was entered on March 15, 2000.  Logan appealed.

II

[¶7] Logan argues her child support should have been calculated solely upon her reduced income in Arizona, and that it was error to impute income to her under N.D. Admin. Code § 75-02-04.1-07(9) based upon her prior income in California.  

[¶8] We recently summarized our standard of review of determinations on matters of child support:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.  A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor’s child support obligation.  As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support.  The trial court’s findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.

Lauer v. Lauer
, 2000 ND 82, ¶ 3, 609 N.W.2d 450 (citations omitted); 
see also
 
Christl v. Swanson
, 2000 ND 74, ¶ 7, 609 N.W.2d 70; 
Buchholz v. Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.

[¶9] Under the Child Support Guidelines, an obligor’s ability to pay child support is not determined solely upon actual income, but also takes into account the obligor’s earning capacity.  
Buchholz
, 1999 ND 36, ¶ 13, 590 N.W.2d 215; 
Otterson v. Otterson
, 1997 ND 232, ¶ 10, 571 N.W.2d 648.  Accordingly, N.D. Admin. Code § 75-02-04.1-07(9), which was adopted effective August 1, 1999, provides:

Notwithstanding subsections 4, 5, and 6, if an obligor makes a voluntary change in employment resulting in reduction of income, monthly gross income equal to one hundred percent of the obligor’s greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed without a showing that the obligor is unemployed or underemployed.

[¶10] Logan argues our prior cases clearly require a showing of underemployment, through evidence demonstrating the obligor is earning less than the prevailing amounts earned by other persons with similar work history in the community, before income may be imputed under the guidelines.  Logan cites 
Lauer
, 2000 ND 82, 609 N.W.2d 450, 
Henry v. Henry
, 2000 ND 10, 604 N.W.2d 234, and 
Nelson v. Nelson
, 547 N.W.2d 741 (N.D. 1996), in support of her argument.  Those cases, however, involved application of other imputation of income provisions in N.D. Admin. Code § 75-02-04.1-07, not subsection 9.  The only case which mentions subsection 9 is 

Lauer
, in which we concluded the district court had not made a finding the obligor had voluntarily changed employment and had not applied subsection 9 in determining child support.

[¶11] Section 75-02-04.1-07(9) unambiguously allows imputation of income without a showing of underemployment.  Under this guideline provision, the court is authorized to impute income based upon the obligor’s prior earning history, without a showing the obligor is unemployed or underemployed, if the obligor has voluntarily changed employment resulting in a reduction in income.  Our prior cases addressing other imputation of income provisions are inapposite.  They do not support the argument that one must show unemployment or underemployment before income may be imputed under N.D. Admin. Code § 75-02-04.1-07(9).

[¶12] Logan also asserts that her decision to change jobs was reasonable under the circumstances and therefore, under the “rule of reason” adopted in 
Olson v. Olson
, 520 N.W.2d 572 (N.D. 1994), income may not be imputed to her.  Logan argues that, if income may be imputed whenever an obligor voluntarily changes jobs, it will place inordinate restrictions upon the obligor’s freedom to make employment decisions.

[¶13] In 
Olson
, 520 N.W.2d at 574, this Court held:

In effect, we are adopting a “rule of reason.”  If the obligor’s voluntary change in employment and earnings is reasonable under all of the circumstances, including the best interests of the children, then additional income cannot be imputed based on earning capacity, and child support should be computed upon actual net monthly income.  If, however, an obligor with an established earnings history voluntarily, without good reason, places himself in a position where he is unable to meet his child support obligations, income compatible with his prior earnings history may be imputed in calculating child support under the guidelines.

[¶14] 
Olson
 was decided before the promulgation of N.D. Admin. Code § 75-02-

04.1-07(9).  The current guidelines do not expressly incorporate a “reasonableness” rule which would preclude imputation of income when an obligor’s voluntary reduction of income was “reasonable.”  We do not mean to imply, however, that the obligor’s reasons for changing employment, and reasonableness of her actions, are wholly irrelevant to the decision to impute income under N.D. Admin. Code § 75-02-

04.1-07(9).  That section provides that the court “may” impute income when an obligor has voluntarily reduced her income.  When a court 
may
 do something, it is not mandatory but is generally a matter within the court’s discretion.  
Christl
, 2000 ND 74, ¶ 7, 609 N.W.2d 70; 
Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.  Thus, the court may consider the reasons for the obligor’s change of employment when exercising its discretion in determining whether to impute income under N.D. Admin. Code § 75-02-04.1-07(9).  

[¶15] A parent has a duty to support her children to the best of her abilities, not simply to her inclinations.  
Henry
, 2000 ND 10, ¶ 6, 604 N.W.2d 234; 
Otterson
, 1997 ND 232, ¶ 10, 571 N.W.2d 648.  The guidelines represent an effort to balance an obligor’s freedom to make employment decisions with the duty to diligently and fully support her children.  
See
 
Henry v. Henry
, 1998 ND 141, ¶ 14, 581 N.W.2d 921; 
Nelson
, 547 N.W.2d at 746.  An obligor is still free to change jobs, but if the result of the change is a decrease in income the obligor who made the change should make a greater sacrifice than her children.  
See
 
Henry
, 1998 ND 141, ¶ 14, 581 N.W.2d 921; 
Nelson
, 547 N.W.2d at 746.  Section 75-02-04.1-07(9), N.D. Admin. Code, embodies these principles.

[¶16] Under the guidelines, an obligor remains free to change jobs and take a reduction in income.  She does so, however, with the knowledge that she must bear the burden of her decision, and may be called upon to support her children at a level based upon her previous income for up to thirty-six months after the change of employment.  
See
 Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75-02-04.1, Child Support Guidelines, p. 36 (June 14, 1999) (prepared by Blaine L. Nordwall).

[¶17] In this case, the referee found that Logan had voluntarily changed employment resulting in a reduction in income.  That finding is supported by Logan’s testimony at the hearing, in which she admitted she voluntarily left her job in California and accepted new employment at a lower salary in Arizona.  Under these circumstances, imputation of income was authorized under N.D. Admin. Code § 75-02-04.1-07(9).

III

[¶18] Logan contends that, even if imputation of income was authorized under N.D. Admin. Code § 75-02-04.1-07(9), the referee erred in calculating the amount to be imputed.  We agree.

[¶19] When a court decides to impute income after an obligor’s voluntary reduction in income, N.D. Admin. Code § 75-02-04.1-07(9) clearly sets out the formula which must be used to calculate imputed income:

monthly gross income equal to one hundred percent of the obligor’s greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed . . . .

In effect, under this provision child support will be calculated based upon the average of the obligor’s twelve highest consecutive monthly earnings beginning three years prior to initiation of the current proceedings.

[¶20] The referee found Logan’s 1998 earnings included $76,381.86 from her California nursing positions and $7,309.16 from the Army Reserves, for total annual income of $83,691.02.  The referee found Logan earned $69,927.47 for the first nine months of 1999 from her California employer, $13,840.00 from her Arizona employer for the last three months of 1999, and $7,538.54 from the Army Reserves, for a total 1999 income of $91,306.00.  The referee did not, however, use either of those figures to calculate the amount to impute to Logan.  Rather, the referee found:

Had the Plaintiff remained at her job at Tenet [in California] she would have earned approximately $93,236.63 ([$69,927.47 ÷ 9] x 12), plus the additional income from the Army Reserve, for a total income of $100,775.17 in 1999.

The referee then imputed income to Logan based upon the $100,775.17, which was a hypothetical approximation of what Logan would have earned had she remained  at her job in California.

[¶21] Section 75-02-04.1-07(9) clearly requires the court to calculate imputed income based upon an obligor’s 
actual
 income in a prior twelve-month period.  The court cannot pick the highest nine months and extrapolate that to a twelve-month figure.  Logan did not actually earn $100,775.17 in any twelve-month period.  Accordingly, the referee erred in imputing income based upon that figure.

[¶22] Because this proceeding was commenced on September 7, 1999, N.D. Admin. Code § 75-02-04.1-07(9) required that income be imputed based upon Logan’s highest actual earnings in a consecutive twelve-month period, commencing on or after September 7, 1996, for which reliable evidence was provided.  The highest twelve-

month period for which reliable evidence was presented in this case is Logan’s 1999 income of $91,306.00.
(footnote: 1)  Accordingly, we reverse and remand for recalculation of child support, with income imputed under N.D. Admin. Code § 75-02-04.1-07(9) based upon Logan’s 1999 income of $91,306.00.

IV

[¶23] Logan contends she was entitled to an adjustment of child support under N.D. Admin. Code § 75-02-04.1-08.1 because she has extended visitation with the children.  We agree.

[¶24] The 1999 Legislative Assembly amended the statutory authority for the Child Support Guidelines to require that the guidelines “[i]nclude consideration of extended periods of time a minor child spends with the child’s obligor parent.”  N.D.C.C. § 14-

09-09.7(1)(e); 
see
 1999 N.D. Sess. Laws ch. 144, § 1.  The Senate Judiciary Committee adopted a Statement of Intent regarding the bill:

STATEMENT OF INTENT

It is the intent of this amendment to direct the Department of Human Services to include in the child support guidelines consideration of extended periods of time a minor child spends with the child’s obligor parent.  The guidelines should consider extended periods of time to mean those situations where an obligor parent has custody of the child for 60 out of 90 consecutive days, or in instances where the parties will have joint physical custody with the child residing with each parent close to equal time.  The phrase “close to equal time” shall mean where each parent has physical custody of the child at least 45% of the time.

[¶25] In response to the Legislative directive, the Department of Human Services promulgated N.D. Admin. Code § 75-02-04.1-08.1, which provides a complex formula for calculating the child support obligation “if a court order provides for extended visitation between an obligor and a child living with an obligee.”  N.D. Admin. Code § 75-02-04.1-08.1(2).  Extended visitation is defined in N.D. Admin. Code § 75-02-04.1-08.1(1):

For purposes of this section, “extended visitation” means visitation between an obligor and a child living with an obligee scheduled by court order to exceed sixty of ninety consecutive nights or an annual total of one hundred sixty-four nights.

[¶26] The State argues this provision should not apply because Logan did not establish she had actually exercised visitation with the children for sixty of ninety consecutive nights during the summer of 1998.  The State’s argument misinterprets the focus of the rule.  The rule requires consideration of length of visitation “scheduled by court order,” not the amount of visitation actually exercised.  The comments of the drafters of N.D. Admin. Code § 75-02-04.1-08.1 clarify the issue:

The mechanism for establishing whether extended visitation existed was designed to avoid repeated litigation or dispute over the amount of actual visitation.  This is done by determining that extended visitation exists only if the visitation is described in the court order.  That court order, at the same time, can accommodate the extended visitation with an adjustment to the child support obligation.  If actual visitation proves inconsistent with ordered visitation, the parties can return to court and get both the visitation and the child support adjusted at the same time.

. . . .

We do not recommend that the adjustment be based on other than visitation scheduled by court order.  If the parties do not actually engage in the scheduled visitation, the appropriate solution is to revisit the court order, not to seek support adjustments (or a lack of adjustment) that are at odds with the visitation order.  By considering only visitation scheduled by court order, the entanglements between child support determinations and visitation determinations are reduced.

Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75-02-04.1, Child Support Guidelines, pp. 37, 39-40 (June 14, 1999) (prepared by Blaine L. Nordwall).  A recent agency determination on the matter lends further support to this conclusion:

So long as the visitation schedule in the court order meets the definition of extended visitation, the obligor is entitled to the extended visitation adjustment regardless of whether or how much visitation is actually exercised. . . .

By tying the applicability of the extended visitation adjustment to the court-ordered visitation schedule, disputes about whether visitation was or was not exercised and the amount of visitation that was or was not exercised are reduced.  If the court-ordered visitation schedule is not reflective of the actual visitation exercised, the appropriate solution is to seek an amendment to the visitation schedule.

IV-D Informational Communication IC-CO-00-07, RE: Child Support Guidelines, N.D. Admin. Code § 75-02-04.1-08.1: Extended Visitation--Applicability Determined by Visitation Schedule in Court Order (N.D. Dep’t of Human Services) (September 19, 2000).

[¶27] The State also suggests the visitation provisions in the amended judgment did not schedule visitation exceeding sixty of ninety consecutive nights.  The relevant portion of the judgment states:

VISITATION:
 Plaintiff shall have liberal visitation rights to include summer visitation, not exceeding two months.  Summer visitation shall commence no sooner than one week after the close of the children’s school, nor end later than one week before the beginning of their next school year.

[¶28] The question is whether “summer visitation, not exceeding two months” constitutes extended visitation exceeding sixty of ninety consecutive nights under N.D. Admin. Code § 75-02-04.1-08.1(1).  We have no doubt the rule would apply if the judgment had ordered, for example, visitation from June 15 through August 15.  This would clearly exceed sixty days.  Similarly, if the judgment had ordered “summer visitation of two months,” again the rule would apply, because any full two-

month period between the end of one school year and the beginning of the next will necessarily encompass at least sixty-one days.

[¶29] Thus, the State’s argument hinges upon semantics: If the court orders two months’ summer visitation, the rule applies, but if it orders “summer visitation, not exceeding two months,” the rule does not apply.  We believe this is a distinction without a difference.

[¶30] Interpretation of a judgment is a question of law, which is fully reviewable on appeal.  
In re S. J. F.
, 2000 ND 158, ¶ 14, 615 N.W.2d 533; 
Jorgenson v. Ratajczak
, 1999 ND 65, ¶ 13, 592 N.W.2d 527.  We interpret this judgment to entitle Logan to exercise summer visitation exceeding sixty days.  The mere fact the court used the language “not exceeding two months” does not suggest Logan was entitled to only some lesser, unspecified amount of visitation.  Rather, we believe the language employed by the court was in recognition of the fact it was not designating the specific two-month period, i.e. “June 15 to August 15,” but allowing flexibility for the parties to determine the precise two-month period each year.  This interpretation is bolstered by the further provision in the judgment that the ordered visitation was to commence no sooner than one week after school closed, and was to end at least one week before the beginning of the next school year.  The court clearly intended to allow the parties to work out the specifics of the visitation, but the language employed does not suggest that Logan was somehow entitled to less than two full months of  visitation.

[¶31] The Child Support Guidelines were adopted in response to the Legislature’s desire for greater specificity and uniformity in the determination and enforcement of child support obligations.  
See
 
Nelson v. Nelson
, 547 N.W.2d 741, 746 (N.D. 1996).  It would not serve the purpose of specificity and uniformity if application of N.D. Admin. Code § 75-02-04.1-08.1 were to turn on minute variations in the language employed in visitation orders.  The clear intent in this case was Logan would have extended summer visitation of two months, with the exact dates to be determined by the parties.  The logical reading of the judgment is that it “schedules” visitation “by court order” exceeding “sixty of ninety consecutive nights,” and therefore child support must be calculated under N.D. Admin. Code § 75-02-04.1-08.1.
(footnote: 2)

V

[¶32] Logan contends the referee erred in failing to provide a credit for child support paid on behalf of Stephanie Bush after her graduation from high school in May 1998.  When the divorce judgment was amended in 1994, Logan was ordered to pay child support of $758 per month for ten months of each year, prorated to equal monthly installments of $632.  The judgment further provided support would continue until “the child” turned eighteen or graduated from high school, whichever occurred later.

[¶33] Although Stephanie turned eighteen in 1997 and graduated from high school in May 1998, neither party sought a modification of child support and Logan continued to pay $632 per month until the present motion was brought in September 1999.  In response to the motion, Logan moved for “correction” of the judgment under N.D.R.Civ.P. 60(a), arguing that, based upon our decision in 
Steffes v. Steffes
, 1997 ND 49, 560 N.W.2d 888, she was entitled to a credit for support paid on behalf of Stephanie after May 1998.  She argues that the guideline amount for two children, based upon her income at the time of the 1994 modification, would have resulted in a support obligation $100 lower for each month after May 1998.

[¶34] In 
Steffes
, the original 1983 stipulated divorce decree provided Allen Steffes  would pay child support of $200 per month for each of the parties’ three children.  The stipulated decree further provided support would continue past age eighteen for each child if the child continued to live at home or was a full-time student.  In 1990, the parties agreed to increase Allen’s monthly child support obligation to $225 per child, for a total of $675.  The amended judgment incorporating this change stated Allen’s obligation as “$675 per month,” and not on a per child basis.  
Steffes
, 1997 ND 49, ¶ 3, 560 N.W.2d 888.  In July 1993, Allen moved to reduce child support, arguing the oldest child had reached the age of majority and was not a full-time student.  The court found she was a full-time student, and further concluded the $675 monthly obligation was within the range of support under the Child Support Guidelines for three children based upon Allen’s $1,900 monthly income.

[¶35] In December 1995 Allen again moved to modify, arguing the two older children were no longer living at home and were not full-time students.  Allen also moved for correction of the 1990 amended judgment under N.D.R.Civ.P. 60(a) to correct a clerical mistake because the judgment did not order support on a per child basis.  He therefore sought a credit for child support erroneously paid for the two older children on a pro rata basis.

[¶36] We concluded Allen was entitled to a credit for child support for those months in which support did not accrue because the contingencies in the judgment for post-majority support had not been met.  
Steffes
, 1997 ND 49, ¶¶ 21-22, 560 N.W.2d 888.  We also concluded, however, that Allen was not entitled to a pro rata credit; rather, the guidelines required that Allen’s support should be recalculated based upon the number of children eligible each month.  
Id.
 at ¶¶ 27-29.  Because the period for which recalculation was necessary began when the oldest daughter became ineligible in January 1994, only a few months after the 1993 modification proceeding, we directed child support be recalculated based upon Allen’s $1,900 monthly salary at that time.

[¶37] In applying 
Steffes
 to this case, we first note that 
Steffes
 was not decided based upon N.D.R.Civ.P. 60(a).  The “clerical mistake” in 
Steffes
 was irrelevant, because we held Allen was not entitled to a pro rata reduction and credit.  Rather, public policy required recalculation of support under the guidelines.  
Steffes
, 1997 ND 49, ¶ 28, 560 N.W.2d 888.  We  concluded the proper remedy was not correction of the judgment, but “an accounting and credit for child support which did not accrue.”  
Id.
 at ¶ 22.

[¶38] In this case, Logan has moved for correction of a “clerical mistake” under N.D.R.Civ.P. 60(a), but has not drawn our attention to any clerical error in the judgment.  Her motion under N.D.R.Civ.P. 60(a) appears to be based upon a misinterpretation of the basis of our holding in 
Steffes
.  The proper remedy, if any, for Logan’s alleged overpayment of support is, as in 
Steffes
, an accounting and credit for support wrongfully paid.

[¶39] Logan argues our holding in 
Steffes
 requires that she receive a credit for the months of June 1998 through August 1999 by recalculating her child support for two children based upon her income at the time of the 1994 modification.  Logan misconstrues our holding in 
Steffes
.  Although we directed that Allen’s child support be recalculated based upon his income as shown in the 1993 modification proceedings, only a few months had passed between those proceedings and the January 1994 date when he was no longer obligated to pay support for the oldest child.  There was no showing his income had substantially changed, and therefore recalculation based upon the $1,900 monthly income was appropriate.

[¶40] The facts in this case are markedly different.  At the time Stephanie graduated from high school in 1998, Logan was still paying support based upon the 1994 amended judgment.  The record shows that, at the time of the 1994 modification, Logan’s gross annual income was less than $40,000.  When Stephanie graduated from high school more than four years later in 1998, and Logan’s support obligation for her ceased, Logan’s annual income had more than doubled to $83,691.02.  Logan concedes that, had a motion been brought to modify support when Stephanie graduated in 1998, Logan’s support for two children based upon her income at that time would have been higher than the $632 she was paying.  It is therefore understandable that Logan did not move to modify her child support obligation when Stephanie graduated, but continued to pay the $632.  Now, after the State has finally moved to modify Logan’s support, she claims the right to reimbursement even though she has, in fact, been paying less than the guideline amount throughout the relevant period.

[¶41] Allowing Logan a credit for “overpayment” of support, when in fact she has been significantly underpaying and depriving her children of support at the level to which they were entitled, would be grossly unfair and inequitable.  Logan was free at any time to move for a modification of child support after her obligation to Stephanie ceased in May 1998.  We will not reward her inaction by allowing a credit for a phantom “overpayment.”  An accounting is an equitable remedy, subject to the respective equities of the parties.  
See
 
Farm Credit Bank of St. Paul v. Brakke
, 483 N.W.2d 167, 174 (N.D. 1992); 
Patten v. Green
, 397 N.W.2d 458, 459 (N.D. 1986); 
Stuber v. Taylor
, 200 N.W.2d 276, 280 (N.D. 1972); 1 Am. Jur. 2d 
Accounts and Accounting
 § 52 (1994).  In this case, the equities clearly do not lie with Logan.

[¶42] We conclude the failure to allow a credit to Logan for “overpayment” of child support after May 1998 was not error.
(footnote: 3)

VI

[¶43] We affirm that portion of the amended judgment allowing imputation of income to Logan and denying her a credit for child support paid on behalf of Stephanie after May 1998.  We reverse the portion of the amended judgment setting the amount of support and remand for recalculation of child support in accordance with this opinion.

[¶44] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Filed 1/30/01 by Clerk of Supreme Court

Maring, Justice, on petition for rehearing.

[¶45] Logan has petitioned for rehearing, arguing this Court erred in remanding for recalculation of child support with income imputed based upon Logan’s 1999 income.  Logan contends N.D.Admin.Code § 75-02-04.1-07(9) allows imputation of income based only upon a twelve-month period falling within the thirty-six months before the proceeding was commenced.  Because this proceeding was commenced on September 7, 1999, Logan argues income may not be imputed based upon the last three months of 1999.

[¶46] Logan has misconstrued the administrative rule.  Section 75-02-04.1-07(9) specifies how imputed income is to be calculated:

monthly gross income equal to one hundred percent of the obligor’s greatest average monthly earnings, in any twelve consecutive months 
beginning
 on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed . . . . (Emphasis added).

[¶47] The administrative rule requires that the twelve-month period 
begin
 within the thirty-

six months before the proceeding was commenced, but not that the twelve-month period conclude prior to commencement of the proceeding.  Accordingly, it is permissible in this case to impute income based upon Logan’s actual 1999 income, because that twelve-month period 
began
 “on or after thirty-six months before” this proceeding was commenced on September 7, 1999, and the actual numbers were available at the time of the hearing.

[¶478] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
It appears Logan’s highest-earning twelve-month period may actually have been October 1998 through September 1999, her last twelve months with her California employer.  The State concedes, however, that it did not provide specific evidence of Logan’s earnings for the last three months of 1998, but merely provided evidence of her total 1998 earnings.

2:    
We note that N.D. Admin. Code § 75-02-04.1-08.1 does not allow a total reduction of child support for those days the obligor parent has the child.  Rather, the formula requires payment of sixty-eight percent of the regular support amount for those scheduled visitation days, with that pro rata amount then used to calculate equal monthly payments.  
See
 N.D. Admin. Code § 75-02-04.1-08.1(2).

3:    
The amended judgment leaves the door open for a repeat of this situation.  The parties’ second child, Amanda, will turn eighteen in March 2001 and is scheduled to graduate from high school in May 2001.  Logan requested that the referee address this situation and specify the amount of support which will be due when Logan’s obligation to support Amanda ceases in June 2001.  This issue was not addressed in the findings, conclusions, or amended judgment.

Logan again asks on appeal that this issue be resolved without the need to return to court again in a few months.  The State likewise concedes that it would have been appropriate for the referee to set the amount of support to be due after Amanda graduates.  On remand, it will be only a few months until Amanda’s scheduled graduation, and, inasmuch as Logan’s support is based upon imputed prior income, it is unlikely there will be a significant change in income warranting use of a different amount to calculate support.  Under these circumstances, we direct that upon remand the referee or trial court should reconsider whether to prospectively set the amount of support which will be due when Logan’s support obligation to Amanda ceases.