2001 ND 185

**Michelle Ann GLEICH, Plaintiff and Appellee,**

v.

**Andrew William GLEICH, Defendant and Appellant.**

**No. 20010010.**

Supreme Court of North Dakota.

Dec. 5, 2001.

Sherry Mills Moore, Foss and Moore, Bismarck, for plaintiff and appellee.

James D. Hovey, Pearson Christensen, Grand Forks, for defendant and appellant.

MARING, Justice.

[¶ 1] Andrew Gleich appealed a divorce decree ordering him to pay Michelle Gleich child support for the parties' four minor children and distributing the parties' marital property. We hold the trial court did not clearly err in distributing the parties' marital property, but the court erred in not adjusting Andrew's child support obligation for extended visitation. We affirm the property distribution, and we reverse the child support award and remand for recalculation.

I

[¶ 2] Andrew and Michelle were married in 1987. They have four children: a son born in 1988, a daughter born in 1990, a daughter born in 1992, and a son born in 1994. Michelle is a registered nurse with a critical care certification, and she worked in health care during the parties' marriage. At the time of trial, she was 43 years old and was working approximately 24 hours per week for $19.40 an hour at Altru Health Systems in Grand Forks. Andrew

was 46 years old with a master's degree in health administration. Andrew has an attention deficit disorder that affected his ability to maintain a job in the health care industry, and at the time of trial, he was employed by Job Service North Dakota with an average net monthly income of $1800.

[¶ 3] Michelle sued Andrew for divorce in 1999. The parties stipulated that Michelle would receive physical custody of the children, subject to reasonable visitation for Andrew. The trial court granted the parties a divorce and awarded Michelle property with a net value of $186,413 and Andrew property with a net value of $144,151. The court granted Michelle physical custody of the parties' four minor children and ordered Andrew to pay child support of $691 per month. Andrew appealed.

[¶ 4] During oral argument to this Court, Andrew claimed the trial court failed to specifically distribute two financial accounts identified under Michelle's name in the parties' N.D.R.Ct. 8.3 Property and Debt Listing as "Vangard" valued at $7,909.31 and "Aultman Health Retirement Savings Plan" valued at $7,378.63. We remanded to the trial court to distribute that property, and we retained jurisdiction under N.D.R.App.P. 35(b). On remand, the trial court awarded Michelle the "Vangard" and "Aultman Health Retirement Savings Plan" financial accounts, and awarded Andrew two certificate of deposits with a cumulative value of $15,339 which had been awarded to Michelle in the court's original decree. The court also increased the value of household goods and a vehicle awarded to Andrew from $14,480 to $15,500, because it neglected to include the value of certain household items in the value of the household property originally awarded to Andrew. The effect of the court's decision on remand is that Michelle

received 54% of a $346,800 net marital estate rather than 56%, and Andrew received 46% of the marital estate rather than 44%.

## II

[¶ 5] Andrew argues the trial court erred in not equally dividing the parties' marital estate. He argues the court erred in deciding all four children were special needs children and required inordinate expenditures for medications. He argues the court's disproportionate property distribution for the perceived needs of the children was erroneous and claims a deviation from the child support guidelines, rather than a disproportionate property distribution, is the appropriate method to address those needs. He argues the court failed to adequately explain the rationale for its unequal property division and seeks a remand for an equal distribution of the parties' marital estate.

[¶ 6] In a divorce action, the trial court must distribute the parties' marital property equitably. N.D.C.C. § 14–05–24. A court's distribution of marital property need not be equal to be equitable, but the court must explain any substantial disparity. *Corbett v. Corbett*, 2001 ND 113, ¶ 12, 628 N.W.2d 312. In distributing marital property, the court must apply the guidelines established under *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966), which:

allow the trial court, in making a property distribution, to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the

time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.

*Corbett,* at ¶ 12 (quoting *Freed v. Freed,* 454 N.W.2d 516, 520 n. 3 (N.D.1990)).

[¶ 7] A trial court's determinations regarding the division of marital property are treated as findings of fact and will not be reversed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). *Northrop v. Northrop,* 2001 ND 31, ¶ 8, 622 N.W.2d 219. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 8] Here, the trial court found Michelle's unrebutted testimony established all four children have health problems; the health concerns for all four children and the logistics for child care precluded Michelle from working full-time; she would need financial resources other than her income and child support to make ends meet for the immediate future; and the special needs of the children resulted in inordinate expenditures for medications which will continue indefinitely. The court explained its

> award of assets and debt amounts to an obvious disparity. [Michelle] has been awarded approximately 54% of the net marital estate. Testimony during trial indicated that all four of the parties' minor children have health problems. There are unusually high expenses for medications. [Michelle] is working part-time, partly due to the fact that she does have young children at home that have chronic special needs. It appears that she has little opportunity for significant raises in pay in the foreseeable future

with her current employment; [Andrew] certainly has at least opportunities for advancement. [Michelle] has had to resort to her savings to subsist during the pendency of this action. [Michelle's] living expenses will exceed those of [Andrew] for the foreseeable future post-divorce. All of these factors have convinced the trial court that a disparate property award is appropriate. [Michelle] should note, however, that should she make a motion for spousal support in the future, this disparate property award will be a consideration as to whether or not such an award is appropriate under the circumstances presented at that time.

[¶ 9] The trial court's explanation indicates the unequal property distribution was based on the circumstances and necessities of each party, including Michelle's diminished earning ability because she was awarded physical custody of four children with varying medical needs and related expenses. The circumstances and necessities of the parties are appropriate factors for consideration under the *Ruff Fischer* guidelines. *See Freed,* 454 N.W.2d at 520 n. 3. A party's earning ability is also a permissible factor for consideration in a property distribution. *Id.*

[¶ 10] Michelle testified the four children were "not simple, every-day kids. These are high maintenance kids." According to Michelle, the oldest child has attention deficit hyperactive disorder, depression, hearing impairment, speech problems, and allergy difficulties; the second oldest child has borderline attention deficit hyperactive disorder; the third oldest child has an anxiety disorder; and the youngest child has allergies and speech problems and was being evaluated to determine whether he has a learning or attention disorder. Michelle testified she regularly worked three days a week from

7:30 a.m. to 4 p.m. and averaged 24 hours per week as a nurse in a critical care unit; she was not able to work as an "on-call" nurse because of the logistics for child care; and the care and stability required by the children curtailed her employment opportunities. Based on Andrew's current net monthly income of $1800, his ability to pay child support beyond the $691 per month ordered by the trial court is problematic. Andrew's child support capabilities coupled with the property available for distribution and the medical and other needs of the children support a modest disparity in the distribution of a $346,800 net marital estate. The trial court adequately explained the rationale for its unequal property distribution, and under the circumstances of this case, we are not left with a definite and firm conviction the court made a mistake in distributing the parties' marital property. We therefore conclude the court's property distribution is not clearly erroneous.

### III

[¶ 11] Andrew argues the trial court erred in calculating his child support obligation and not giving him a downward adjustment to reflect extended visitation under N.D. Admin. Code § 75–02–04.1–08.1.

[¶ 12] In *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215, we said child support determinations involve questions of law which are subject to a de novo standard of review, findings of fact which are subject to a clearly erroneous standard of review, and in some limited areas, matters of discretion which are subject to an abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines. *Id.*

[¶ 13] Under N.D. Admin. Code § 75–02–04.1–08.1, a trial court must adjust a child support award if the obligor is awarded "extended visitation," which is defined as "visitation between an obligor and a child living with an obligee scheduled by court order to exceed sixty of ninety consecutive nights or an annual total of one hundred sixty-four nights." In *Logan v. Bush*, 2000 ND 203, ¶ 26, 621 N.W.2d 314, we said calculation of extended visitation requires consideration of the length of visitation "scheduled by court order," not the amount of visitation actually exercised, and if the visitation schedule in the court order meets the definition of extended visitation, the obligor is entitled to an adjustment regardless of whether, or how much, visitation is actually exercised. Our decision in *Logan* establishes a bright line that extended visitation is determined by reference to the visitation scheduled in the court order. *See also Corbett*, 2001 ND 113, ¶ 32, 628 N.W.2d 312 (general statement of liberal and reasonable visitation does not satisfy specific guideline requirement of court order providing for extended visitation; guidelines contemplate visitation actually ordered by trial court, rather than hypothetical possibilities).

[¶ 14] Here, the trial court found Andrew's net income was $1800 per month, and ordered him to pay $691 per month in child support for the four children, which is the scheduled amount of child support for four children without any adjustments. The court awarded Andrew "liberal visitation" and stated "[u]nless the parties mutually agree otherwise, and taking into consideration the desires of the children, 'liberal visitation' for [Andrew] is intended to mean a minimum of two evenings per week, and every other weekend, alternating major holidays, Father's Day, time on the respective child's birthday, and at least eight weeks of visitation during the summer months." The court's order provides scheduled visitation of at least eight weeks,

or 56 days, during the summer months, and does not specifically state Michelle is entitled to visitation on alternating weekends during that eight-week period. Coupled with visitation "every other weekend" and the other days scheduled in the court's order, the court's scheduled visitation of eight weeks during the summer months exceeds "sixty of ninety consecutive nights." The court's order specifically scheduled extended visitation for Andrew within the meaning of N.D. Admin. Code § 75–02–04.1–08.1, and the court erred as a matter of law in not adjusting Andrew's child support obligation to reflect the extended visitation. We therefore reverse the court's child support award and remand for recalculation of Andrew's child support obligation under N.D. Admin. Code § 75–02–04.1–08.1.

## IV

[¶ 15] We affirm the trial court's distribution of the parties' marital property, and we reverse the court's order setting Andrew's child support obligation and remand for recalculation of his child support obligation in accordance with this opinion.

[¶ 16] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.