Filed 7/11/02 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2002 ND 114

Corrina R. Shaw, Plaintiff and Appellee

v.

Nathan D. Shaw, Defendant and Appellant

No. 20010268

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Robert W. Holte, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Maring, Justice.

Carl O. Flagstad, Jr., 627 3
rd
 Street NE, P.O. Box 3178, Minot, N.D. 58702-

3178, for defendant and appellant.

Faron E. Terry, Terry Law Office, 216 S. Broadway, Suite 3, P.O. Box 717, Minot, N.D. 58702-0717, for plaintiff and appellee.

Shaw v. Shaw

No. 20010268

Maring, Justice.

[¶1] Nathan Shaw appeals from a judgment dated August 22, 2001, arguing the trial court erred in its custody determination, property distribution, and child support calculation.  We affirm the trial court’s custody determination and property distribution, but we reverse the trial court’s child support calculation and remand for recalculation in accordance with the child support guidelines.

I

[¶2] Corrina and Nathan Shaw were married on November 27, 1993.  At the time of trial, Corrina was a member of the United States Air Force and lived on the Air Force Base near Minot, North Dakota.  Nathan is a former member of the United States Army and was employed at Z-Tel Telecommunications at the time of trial.  During their marriage, Corrina and Nathan had one child, born in 1994.  

[¶3] In May of 2000, Corrina filed for a divorce from Nathan.  A judgment was entered on August 22, 2001.  Under the terms of the judgment, the parties would have joint legal and physical custody of their child, with Corrina having physical custody during the nine-month school year and Nathan having physical custody for three months in the summer.  The judgment also required Nathan to pay Corrina $362.00 per month in child support.  In regard to the property distribution, Corrina was awarded property with a net value of $6,031.88 and Nathan was awarded property with a net value of $6,212.89.  Nathan appealed from the judgment on October 25, 2001.

II

[¶4] Nathan argues the trial court’s custody determination was clearly erroneous because the evidence at trial showed the moral fitness factor weighed strongly in favor of Nathan and because Corrina had frustrated Nathan’s attempts to visit their child during the period of the parties’ separation. 

[¶5] A trial court’s initial custody determination must be based on the best interest and welfare of the child, considering all of the factors listed in N.D.C.C. § 14-09-06.2(1).  
See
 
Dufner v. Dufner
, 2002 ND 47, ¶ 17, 640 N.W.2d 694.  A separate finding is not required for each factor, but the trial court’s findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the court’s decision.  
Id.
  A trial court’s custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous.  
See
 
 Stoppler v. Stoppler
, 2001 ND 148, ¶ 7, 633 N.W.2d 142.  A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) only if it is induced by an erroneous view of the law, there is no evidence to support it, or, though some evidence supports it, on the entire record we are left with a definite and firm conviction a mistake has been made.  
See
 
Riehl v. Riehl
, 1999 ND 107, ¶ 7, 595 N.W.2d 10.   

[¶6] In its memorandum opinion, which the trial court incorporated into its findings of fact, the court found it would be in the child’s best interest for Corrina to have physical custody of her for nine months and for Nathan to have physical custody of her for three months.  The first reason the trial court gave for this decision was:

that [the child] has been in Cor[r]ina’s physical custody since the parties’ separation and has been attending kindergarten at the Minot Air Force Base school.  This decision would allow [the child] to continue her education with hopefully many of the students she attended kindergarten with; and allow her to basically continue with school from the home she has been living in for the past several years.

[¶7] We can infer from the trial court’s first reason for awarding primary physical custody to Corrina that it found factor d, “[t]he length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity,” to weigh in favor of awarding primary physical custody to Corrina.  
See
 N.D.C.C. § 14-

09-06.2(1)(d).  The trial court’s concerns about maintaining the custodial relationship that existed prior to the divorce and allowing the child to attend the same school and live in the same house are all valid considerations under factor d.  As we explained in 
Stoppler
,:

Essentially, factor d addresses past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting.  It also addresses the quality of that past environment, and the desirability of maintaining continuity.  Under factor d, prior custody is a factor to be considered when determining the custodial arrangement which is best for the child.

2001 ND 148, ¶ 9, 633 N.W.2d 142 (citations and internal quotation marks omitted); 
see also
 
Dufner
, 2002 ND 47, ¶ 19, 640 N.W.2d 694 (“The trial court recognized the strong attachment to the home, school, and community the young children exhibited.”); 
Heggen v. Heggen
, 452 N.W.2d 96, 101 (N.D. 1990) (stating that established patterns of care and nurture are relevant factors for consideration in deciding custody).

[¶8] The second reason given by the trial court for awarding primary physical custody of the child to Corrina was:

that Nathan has testified that he plans to continue attending Minot State University, as well as working a full-time job.  Cor[r]ina’s current work schedule is basically 40 hours per week, Monday through Friday.  Therefore, it appears to be a better chance that [the child] would have a parent home in the evenings during the school year if Cor[r]ina has the custody during the school year.

[¶9] We can infer from this reason that the trial court found factor e, “[t]he permanence, as a family unit, of the existing or proposed custodial home,” to weigh in favor of awarding primary physical custody to Corrina.  
See
 N.D.C.C. § 14-09-

06.2(1)(e).  Under factor e, trial courts are to weigh all facts that have a bearing on the permanence of the family unit that will exist in the proposed custodial home of each parent.  
Stoppler
, 2001 ND 148, ¶ 9, 633 N.W.2d 142.  “While there clearly is a degree of overlap between factors d and e, the focus of factor e is the child’s prospects for a stable family environment.”  
Id.
 (internal quotation marks omitted).  While Nathan’s desire to further his education in order to improve his and his daughter’s quality of life is commendable, the fact that Corrina may have a better chance than Nathan to be at home with their child in the evening during the school year is a factor that the trial court can consider in examining the permanence and stability of the family unit proposed by each parent.  
See, e.g.
, 
Kjelland v. Kjelland
, 2000 ND 86, ¶ 10, 609 N.W.2d 100 (addressing a parent’s ability to place parenting above other commitments under factors d and e); 
Landsberger v. Landsberger
, 364 N.W.2d 918, 919 (N.D. 1985) (stating the trial court did not err in applying factors d and e where it considered the fact that one parent “began seeking some social life outside of the home in evenings” during the last year of the marriage and the parent who was awarded custody “now focuses more upon the children”).  

[¶10] Nathan does not contend there was not evidence to support the two reasons the trial court found for awarding primary custody to Corrina.  Rather, Nathan argues the trial court’s custody determination is clearly erroneous because factor f, “[t]he moral fitness of the parents,” weighs heavily in his favor and because Corrina has frustrated his visitation rights. 

[¶11] At trial, evidence was presented through the testimony of Nathan and a custody investigator which indicated Corrina had been involved in romantic relationships with two different men prior to her divorce from Nathan.  In regard to Nathan’s claim of visitation frustration, Nathan testified he was detained by Air Force officials on three different occasions when he tried to enter the Air Force Base for visitation with their child.  He testified he believed Corrina was responsible for these incidents because she never informed the Air Force that he had visitation rights under a court order.  Nathan also testified he was escorted out of their child’s daycare center on one occasion and he believed Corrina was responsible for this as well.  

[¶12] Corrina admitted having friendships with men prior to her divorce from Nathan, but denied ever being involved in a romantic relationship with another man.  Similarly, Corrina denied the allegation that she told Air Force authorities and the daycare center that Nathan was not allowed to have contact with their child, and she testified she gave the Air Force authorities a copy of the court order which granted Nathan visitation rights during the parties’ separation.

[¶13] The trial court in this case was presented with conflicting versions of evidence regarding Corrina’s relationships with other men and the alleged frustration of Nathan’s visitation rights.  Although the trial court did not make specific findings on these issues, we can infer from its silence that it chose to believe Corrina’s view of the evidence over Nathan’s view.  
See
 
Stoppler
, at ¶ 7 (“A choice between two permissible views of the evidence is not clearly erroneous.”).  Furthermore, we can also infer from the two specific reasons the trial court gave in support of its custody determination that it found other best interest factors outweighed any evidence of moral unfitness or frustration of visitation on the part of Corrina.  
See
 
Dufner
, 2002 ND 47, ¶ 17, 640 N.W.2d 694 (“A separate finding is not required for each factor . . . .”); 
Foreng v. Foreng
, 509 N.W.2d 38, 40 (N.D. 1993) (refusing to adopt the position “that evidence of extramarital relationships, per se, is an irrefutable indication of moral unfitness”).

III

[¶14] In Nathan’s second argument on appeal, he contends the trial court’s property distribution is clearly erroneous.

[¶15] In 
Dufner
, we recently summarized our standard for reviewing a trial court’s property distribution:

Under N.D.C.C. § 14-05-24, when a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper.  There is no set formula for dividing a marital estate, but the trial court must equitably divide the property based upon the circumstances of the particular case.  With property division, equitable does not mean equal, but a substantial disparity needs to be explained.  The trial court’s determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous.

2002 ND 47, ¶ 8, 640 N.W.2d 694 (citations and internal quotation marks omitted).

[¶16] Nathan argues the trial court’s property distribution in this case is clearly erroneous because the trial court included a 1986 Iszuzu Trooper as marital property even though Nathan testified it was owned by his mother.  Nathan, however, also testified that, for insurance purposes, his name was on the title of the vehicle along with his mother’s name.  Additionally, Nathan testified his mother and his grandparents purchased the Iszuzu Trooper specifically for him to use because his other vehicle was not running.  Furthermore, Nathan testified he wasn’t expected to pay his mother or his grandparents for the vehicle.  Under these circumstances, we conclude there was sufficient evidence for the trial court to include the Trooper as marital property.  As we explained in 
Dufner
,

We have held the trial court must consider all property accumulated by the parties, whether jointly or individually owned.  We have repeatedly held that property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution.  After all assets are included in the marital estate, under the Ruff-Fischer guidelines the source of the property can be considered in making the equitable distribution.

Id.
 at ¶ 9 (citations and internal quotation marks omitted).  The trial court’s property distribution was not clearly erroneous.

IV

[¶17] Nathan argues he is entitled to an adjustment in child support for extended visitation because he will have physical custody of their child for 60 of 90 consecutive nights in the summer.

[C]hild support determinations involve questions of law which are subject to a de novo standard of review, findings of fact which are subject to a clearly erroneous standard of review, and in some limited areas, matters of discretion which are subject to an abuse of discretion standard of review.  A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines.

Gleich v. Gleich
, 2001 ND 185, ¶ 12, 636 N.W.2d 418.

[¶18] Under N.D. Admin. Code § 75-02-04.1-08.1, a trial court must adjust a child support award if the obligor is awarded “extended visitation,” which is defined as “visitation between an obligor and a child living with an obligee scheduled by court order to exceed sixty of ninety consecutive nights or an annual total of one hundred sixty-four nights.”  
See
 N.D. Admin. Code § 75-02-04.1-08.1.  The application of the extended visitation adjustment is dependent on the length of visitation scheduled in the court order.  
See
 
Gleich
, 2001 ND 185, ¶ 13, 636 N.W.2d 418.  In this case, the judgment provides Nathan “shall have physical custody for the approximate three months of summer vacation, commencing one week after school ends each spring until one week before school commences each fall, subject to reasonable weekend visitation and major holiday visitation rights by the Plaintiff.”  If the judgment had stated Nathan shall have “visitation” rather than “custody,” N.D. Admin. Code § 75-02-04.1-08.1 clearly would apply because, after Corrina’s holiday and weekend visits are deducted, the judgment would give Nathan visitation with their child exceeding sixty of ninety consecutive nights.  Thus, the question in this case is whether N.D. Admin. Code § 75-02-04.1-08.1 should not apply when the obligor parent is entitled to custody rather than visitation for sixty of ninety consecutive nights.

[¶19] Section 75-02-04.1-08.1, N.D. Admin. Code, was promulgated in reaction to the Legislature’s directive in N.D.C.C. § 14-09-09.7(1)(e) that the Child Support Guidelines “[i]nclude consideration of extended periods of time a minor child spends with the child’s obligor parent.”  
See
 
Logan v. Bush
, 2000 ND 203, ¶¶ 24-25, 621 N.W.2d 314.  In interpreting N.D. Admin. Code § 75-02-04.1-08.1 in 
Logan
, we quoted the Senate Judiciary Committee’s Statement of Intent regarding N.D.C.C. § 14-09-09.7(1)(e):

                      STATEMENT OF INTENT 

It is the intent of this amendment to direct the Department of Human Services to include in the child support guidelines consideration of extended periods of time a minor child spends with the child’s obligor parent.  The guidelines should consider extended periods of time to mean those situations where an obligor parent has custody of the child for 60 out of 90 consecutive days, or in instances where the parties will have joint physical custody with the child residing with each parent close to equal time.  The phrase “close to equal time” shall mean where each parent has physical custody of the child at least 45% of the time.

Logan
, at ¶ 24 (quoting the Senate Judiciary Committee’s Statement of Intent).  It is clear from this Statement of Intent that N.D. Admin. Code § 75-02-04.1-08.1 was intended to apply regardless of whether the divorce decree orders “visitation” or “custody” for the obligor parent that exceeds 60 of 90 consecutive nights.  Additionally, N.D.C.C. § 14-09-09.7(1)(e), the statutory authority for N.D. Admin. Code § 75-02-04.1-08.1, does not distinguish between custody and visitation, but uses the phrase “extended periods of time.”  
See
 N.D.C.C. § 14-09-09.7(1)(e).  Therefore, we conclude Nathan’s child support obligation in this case must be determined under N.D. Admin. Code § 75-02-04.1-08.1.
(footnote: 1)  

V

[¶20] We, therefore, affirm the trial court’s custody determination and property distribution, but we reverse the child support award and remand for recalculation in accordance with N.D. Admin. Code § 75-02-04.1-08.1. 

[¶21]

Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
The parties agree the trial court relied on an incorrect amount of gross income for Nathan in determining his child support obligation.  However, both parties concede the difference between the correct amount and the amount relied on by the trial court was not significant enough to affect the ultimate amount of Nathan’s monthly child support payments.  Nonetheless, in calculating Nathan’s child support obligation on remand, the trial court should use the correct amount of Nathan’s gross annual income, which is $23,400.00.