2004 ND 165

**Gilbert S. HORNER, Plaintiff and Appellant,**

v.

**Edwina M. HORNER, Defendant and Appellee.**

No. 20030367.

Supreme Court of North Dakota.

Aug. 31, 2004.

Richard B. Baer, Richard B. Baer, P.C., Bismarck, for plaintiff and appellant.

Donavin L. Grenz, Linton, for defendant and appellee.

NEUMANN, Justice.

[¶ 1]   Gilbert S. Horner appealed from a judgment granting him a divorce from Edwina M. Horner and dividing their marital property.  We conclude the district court's division of marital property is not clearly erroneous, and we affirm.

## I

[¶ 2]   Gilbert, age 43 at the time of trial, and Edwina, age 39, met and began dating during the late 1990s.   Gilbert has a high school education and Edwina has attended "some college."   Gilbert was farming with his father near Kintyre under an informal one-quarter crop-share partnership and also worked part-time for two area live-stock markets.   Gilbert also owned cattle he kept on his parents' farm.   Edwina was living in Bismarck with her young daugh-ter from a previous relationship and work-ing for Vintage Guitar, Inc. Edwina had been working full-time for several years as the shipping manager at Vintage Guitar and was earning $9.75 per hour, or about $21,000 per year, plus medical benefits. Edwina was also in the preliminary stages of attempting to purchase a home.   How-ever, the couple became engaged and Ed-wina agreed to "move out to the farm, help out on the farm and work a part time job." In September 1999, Edwina quit her job at Vintage Guitar and moved to Linton with her daughter so the child could begin school there.   Edwina was employed part-time at a variety of Linton area jobs, earning substantially less than she had earned in Bismarck.   Gilbert eventually purchased a double-wide trailer in March 2000, moved it to his parents' farmstead, and Edwina and her daughter moved from Linton to the farm.

[¶ 3]   Gilbert and Edwina were married on September 30, 2000, in Linton, and Gilbert paid off about $11,000 of Edwina's debts.   Edwina continued to work at a Linton grocery store during the early part of the marriage until Gilbert asked her to quit, insisting that she stay home on the farm.   Edwina performed the household chores, cared for Gilbert and her daughter, and also helped out with farm chores.   She had an accident with a 4–wheeler while checking cattle and aggravated injuries she had received in a 1995 automobile accident.   Marital problems developed and the couple separated at the end of August 2001 for a four-month period.   They reu-nited during Christmas 2001, and lived together for ten additional months, until Gilbert told Edwina to leave the marital home and sued her for divorce in October 2002.

[¶ 4]   Around this time, Gilbert began making gifts and payments to his father. He sold two grain hopper bins valued at more than $7,500 to his father for $1 each, and bought him a bull.   He sold calves and gave his father a cattle proceeds check for $21,700 and paid the Production Credit Association $28,500 on his father's loan for a new piece of farm equipment.   Gilbert also cashed in two life insurance policies. In the meantime, Edwina had moved back to Bismarck with her daughter, found an apartment, and attempted to support her-self and her daughter on $370 per month child support payments from the child's father and from approximately $6,000 in her daughter's savings account.   Edwina currently works part-time, 28 hours per week, as a clerk at a Bismarck medical center earning $8.35 per hour.   She suf-fers from arthritis and back and neck pains, but has been unsuccessful in apply-ing for social security disability benefits. The district court ordered that Gilbert pay $1,000 per month in interim spousal sup-port pending the divorce trial, $983 to reimburse Edwina for new tires on her pickup and moving expenses, $1,500 for Edwina's partial attorney fees, and $80 for reimbursement of payment of Gilbert's di-vorce filing fee.

[¶ 5] The only contested issues during the trial were the distribution of the mari-tal property and Edwina's request for spousal support.   Edwina proposed, at a minimum, that she receive more than $40,000 "for her lost earnings and benefits

which she gave up to become Plaintiff's wife," rehabilitative spousal support in the amount of $1,000 per month for two years, and her attorney fees and costs. Gilbert sought an "unequal equitable division of the property of the parties based upon the facts that much of the assets involved in this case were owned by the Plaintiff prior to marriage and that they were originally acquired with the Plaintiff's personal funds." Gilbert argued spousal support should be terminated or substantially reduced as to the amount and period of payments, and that Edwina receive only "liquid assets ... limited to ... what the court believes would further be necessary to restore her to pre-marital status."

[¶ 6] The district court ruled that Gilbert had "attempted to hide or wrongfully gift assets," and included those assets, along with the proceeds of the life insurance policies, in the marital estate. The court further found "[m]ost of their assets and debts have been accumulated during their marriage." The court awarded Gilbert his farm assets, financial accounts and household goods, totaling $186,939. The court awarded Edwina her vehicle, financial account, household goods and personal debt, for a net total of $5,681. The court ordered a further division was necessary, reasoning:

> Eleven days before Edwina signed the Admission of Service, Gilbert cashed in a ... Knights of Columbus insurance policy on October 7, 2002, and received cash proceeds in the amount [of] $7,125. He cashed in another Knights of Columbus insurance policy on November 21, 2002 [this, of course, was after he served his own Summons which required both parties not to dispose of any assets except for the necessities of life and the retention of counsel, and to account to the other spouse for the proceeds within 30 days], and received cash proceeds in the amount of $6,452. It appears there is a

life insurance policy with Security International Insurance Company that is still in force with a cash value of $2,243. The total of these three items is $15,820, which shall be added to Gilbert's subtotal of $186,939 for a total of $202,759. The Court is reducing this amount by the total of the monthly support payments he has made to Edwina as required by the Interim Order in the amount of $1,000 per month, which was paid for eleven months, for a deduction of $11,000. The Court is also allowing a similar deduction for Gilbert for his living expenses for those same eleven months for another $11,000. Thus, the court is reducing the amount of Gilbert's share of the marital estate by $22,000 to $180,759. Although the Court has added in assets Gilbert attempted to hide or transfer, if he had not done so, they would have been in the family checking account and would have paid the maintenance expenses of the family unit in the interim. Since the Court has included all of these hidden assets, it has allowed the $22,000 in family expenses as an offset.

The difference between the award of a sub-total of $180,759 to Gilbert and the award of a sub-total of $5,681 to Edwina is $175,078. One-half of this amount paid to Edwina by Gilbert would make the distribution of the marital estate equal and equitable. One-half of the difference is $87,539.

As further division, Gilbert is OR-DERED to pay Edwina the sum of $20,539 no later than December 31, 2003, and the sum of $1,000 per month for 67 months beginning with the month of January, 2004. Said payments are to be made on or before the 5th day of each month. With these funds, Edwina can pay her attorney fees and costs.

The court did not award Edwina any spousal support and left the parties responsible for payment of their own attorney fees. Gilbert appealed.

## II

[¶ 7] Gilbert argues the district court erred in distributing the marital property.

[¶ 8] A district court's decision regarding division of property is a finding of fact reversible on appeal only if clearly erroneous. *Hogan v. Hogan*, 2003 ND 105, ¶ 14, 665 N.W.2d 672. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. *Walker v. Walker*, 2002 ND 187, ¶ 7, 653 N.W.2d 722.

[¶ 9] Under N.D.C.C. § 14–05–24(1), when a divorce is granted, the district court must make an equitable distribution of the property of the parties. When distributing marital property, all of the assets must be considered to ensure the division is equitable. *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 21, 673 N.W.2d 601. When all of the assets and debts have been included, the district court can apply the *Ruff–Fischer* guidelines. *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255. Under these guidelines, the court considers:

"The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other mat-

ters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination."

*Bladow v. Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724 (quoting *Weigel v. Weigel*, 2000 ND 16, ¶ 6, 604 N.W.2d 462).

[¶ 10] Gilbert first argues the district court's finding that most of the marital assets and debts were accumulated during the marriage is clearly erroneous.

[¶ 11] During trial, the parties did not focus on when the bulk of the marital assets and debts were acquired. The biggest marital asset, valued at $50,000 by the court, was the double-wide trailer purchased by Gilbert in March 2000 before the marriage. The record shows that the 4–wheeler, which the court valued at $3,750, was acquired during the marriage. The parties' tax records indicate that a 3,000 bushel hopper bin was acquired for $7,065 in July 2001. Farm records further reveal that during March, April, May and September 2002, the couple paid $4,777.50 for the purchase of livestock. The court also found the value of grain in storage or in the field to be $9,505 and hay on hand to be $5,000. The record is ambiguous as to when the other assets were acquired. Even if the district court's finding that "most" of the marital assets and debts were acquired during the marriage is clearly erroneous, it does not follow that reversal is required.

[¶ 12] "In divorce cases involving division of property, the courts generally start with the view that marital property should be equally divided, and although the division need not be exactly equal to be equitable, the trial court must explain any substantial disparity." *Reiser v. Reiser*, 2001 ND 6, ¶ 10, 621 N.W.2d 348. While a long-term marriage generally supports an equal division of

property, *see Schoenwald v. Schoenwald,* 1999 ND 93, ¶ 23, 593 N.W.2d 350; *Christmann v. Christmann,* 1997 ND 209, ¶ 7, 570 N.W.2d 221, we have said a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage. *See Buzick v. Buzick,* 542 N.W.2d 756, 759 (N.D.1996); *Lill v. Lill,* 520 N.W.2d 855, 857 (N.D.1994). Despite these generalities, duration of a marriage is only one factor of the *Ruff–Fischer* guidelines and is not controlling in a distribution of marital property. *See Lill,* 520 N.W.2d at 857. "There is no set formula for dividing a marital estate, but the trial court must equitably divide the property based upon the circumstances of the particular case." *Nelson v. Nelson,* 1998 ND 176, ¶ 6, 584 N.W.2d 527. Consequently, the circumstances can be such that an equal division of the marital estate is appropriate even if the marriage is of short duration. *See, e.g., Reiser,* 2001 ND 6, ¶¶ 9–13, 621 N.W.2d 348; *Weigel,* 2000 ND 16, ¶¶ 7–8, 604 N.W.2d 462.

[¶ 13] It is appropriate for a court to consider all of the parties' time together in dividing the marital property when parties live together and then marry. *See Northrop v. Northrop,* 2001 ND 31, ¶ 12, 622 N.W.2d 219. Nevertheless, Gilbert and Edwina's time together was relatively short. Considering the couple's separation, Gilbert and Edwina were together for approximately three years. There are circumstances present, however, that convince us the district court's property division is not clearly erroneous.

[¶ 14] Although the district court refused to award Edwina any spousal support, because property division and spousal support are interrelated and should be considered together, we have approved awards of a greater amount of property to disadvantaged spouses in lieu of spousal support. *See Mellum v. Mellum,* 2000 ND 47, ¶ 19, 607 N.W.2d 580; *Bender v. Bender,* 276 N.W.2d 695, 698 (N.D.1979). We have said a disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *See Walker,* 2002 ND 187, ¶ 15, 653 N.W.2d 722; *McDowell v. McDowell,* 2001 ND 176, ¶ 12, 635 N.W.2d 139; *Marschner v. Marschner,* 2001 ND 4, ¶ 10, 621 N.W.2d 339. Equitable rehabilitative spousal support goes further than minimal self-sufficiency and aims to mitigate marital disadvantage caused by the impact at divorce of an economic role assumed during marriage. *See Sommers v. Sommers,* 2003 ND 77, ¶ 16, 660 N.W.2d 586; *Riehl v. Riehl,* 1999 ND 107, ¶ 15, 595 N.W.2d 10.

[¶ 15] Here, the district court noted that "[t]heir ages are a somewhat significant factor" because Edwina was 39 and Gilbert was 43. Edwina had been employed full-time with medical benefits in Bismarck and was starting to buy a house when Gilbert proposed marriage. Edwina left her job in Bismarck for part-time employment in the Linton area paying substantially less than she had been earning in Bismarck. Gilbert eventually asked Edwina to quit her job and stay on the farm. There, she took care of the household and assisted in farm chores, aggravating prior injuries she had received in an automobile accident. Edwina testified she purchased the groceries for the family from her funds, including the proceeds of child support payments. The court noted "Gilbert appears to be in good health, while Edwina suffers from a variety of back and neck pains as well as arthritis." Edwina had difficulty finding employment after the marriage failed, and currently works part-

time earning less than she had been earning before the marriage. Edwina has been significantly disadvantaged by the marriage and divorce, and the court's findings reflect that the division of the marital property was based, at least in part, on spousal support considerations. *Compare Weigel*, 2000 ND 16, ¶ 10, 604 N.W.2d 462 (noting spousal support is sometimes appropriate even when the duration of the marriage was short).

[¶ 16] Another important factor the district court considered was "Gilbert's efforts to convey assets of the marital estate to his father through gifts or payments that were not required or part of their farming partnership." This Court has long recognized that economic fault is a proper factor for the trial court to consider in dividing marital property. *See Hoverson v. Hoverson*, 2001 ND 124, ¶ 17, 629 N.W.2d 573; *Peterson v. Peterson*, 1999 ND 191, ¶¶ 9–10, 600 N.W.2d 851; *Bell v. Bell*, 540 N.W.2d 602, 605 (N.D. 1995). "A party's dissipation of marital assets is a particularly relevant factor in arriving at an equitable distribution of the property." *Halvorson v. Halvorson*, 482 N.W.2d 869, 871 (N.D.1992); *see also Barth v. Barth*, 1999 ND 91, ¶ 16, 593 N.W.2d 359; *Theis v. Theis*, 534 N.W.2d 26, 28 (N.D.1995).

[¶ 17] The district court noted the N.D.R.Ct. 8.3 property and debt listing "was not timely submitted, was not signed by Gilbert, and was incomplete," even "after the Court allowed the parties and counsel to meet for 40 minutes, thus delaying the start of the trial." The court further noted Gilbert had violated the restraining provisions of N.D.R.Ct. 8.4(a)(1) by conveying assets to his father and explained:

> After filing for divorce, Gilbert gave two grain hoppers to his father, and he gave him a cattle proceeds check for $21,700, and he paid $28,500 to PCA on his father's loan for a new piece of equipment. He also bought his father a bull, although the bull runs with all of the livestock owned by both Gilbert and his father. Gilbert testified that his agreement with his father changes all of the time. The Court finds his testimony as to his agreement with his father to be designed solely to hide as much of his assets as possible to reduce the marital estate, and thus limit what assets Edwina could receive.

The district court's award of substantial marital assets to Edwina is not too harsh a sanction for Gilbert's refusal to cooperate and his intentional dissipation of marital assets. Gilbert's economic fault also supports the court's division of the marital property.

[¶ 18] Furthermore, contrary to the assumption of the district court and the parties, Edwina did not receive 50 percent of the marital assets. The bulk of Edwina's property distribution consisted of 67 monthly payments of $1,000 beginning in January 2004. Periodic cash payments awarded without interest need to be discounted to present value in determining whether a property distribution is equitable. *See Welder v. Welder*, 520 N.W.2d 813, 816 (N.D.1994); *Steckler v. Steckler*, 519 N.W.2d 23, 25 (N.D.1994); *Sateren v. Sateren*, 488 N.W.2d 631, 633 (N.D.1992); *Lucy v. Lucy*, 456 N.W.2d 539, 542 (N.D. 1990); *Pankow v. Pankow*, 371 N.W.2d 153, 154 (N.D.1985). Assuming a fair rate of return on an instrument of similar maturity in January 2004 was 3.5 or 4 percent, *see* Federal Reserve Statistical Release, Selected Interest Rates, January 5, 2004, the actual present value of the monthly payments awarded to Edwina is approximately $12,000 or $13,000 less than $67,000 ($55,265.27 at 3.5 percent; $53,765.81 at 4 percent). Considering the

present value of the future payments, Edwina received $12,000 or $13,000 less in marital property than did Gilbert.

[¶ 19] Gilbert argues the district court's division of marital property creates a financial burden for him and threatens the viability of his farming operation. Courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property. *Heggen v. Heggen,* 541 N.W.2d 463, 465 (N.D.1996); *Pankow,* 371 N.W.2d at 157. When a court grants a money judgment to achieve an equitable distribution, it should set the term for payment of the cash judgment for as short a period as possible without imposing a serious hardship on the party responsible to pay the judgment. *Hendrickson v. Hendrickson,* 553 N.W.2d 215, 220 (N.D. 1996); *Heggen,* 541 N.W.2d at 465.

[¶ 20] Here, the district court awarded Gilbert all of the farm and ranch income-generating property. We have often recognized the importance of preserving the viability of a business operation like a family farm. *See, e.g., Marschner,* 2001 ND 4, ¶ 17, 621 N.W.2d 339; *Gibbon v. Gibbon,* 1997 ND 210, ¶ 7, 569 N.W.2d 707. Distributing farm assets to one spouse with an offsetting monetary award to the other spouse is one method of achieving this goal. *See Gibbon,* at ¶ 7; *Heley v. Heley,* 506 N.W.2d 715, 718 (N.D. 1993). Gilbert's claim that the monetary award to Edwina will cause serious hardship to his farming operation is belied by the more than $50,000 in gifts and payments he made to his father around the time of the divorce proceedings. The district court was not impressed with Gilbert's claim of financial inability to pay, and neither are we.

[¶ 21] Even if the district court's finding that most of the marital assets were accumulated during the marriage is clearly erroneous, the error is harmless in this case. Considering that the property distribution was made partly in lieu of spousal support, Gilbert's refusal to cooperate and his intentional dissipation of assets to attempt to reduce the marital estate, and the present value of the future payments awarded to Edwina, we cannot say the district court's division of marital property is clearly erroneous.

### III

[¶ 22] The judgment is affirmed.

[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 24] Even if the district *court* could have awarded the assets and debts as it did, absent its clearly erroneous finding "that 'most' of the marital assets and debts were acquired during the marriage," how do we know it *would* have awarded them as it did? We do not.

[¶ 25] Our law is clear:

In distributing marital property, the court *must apply* the guidelines established under *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952)[,] and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966), which:

> allow the trial court, in making a property distribution, to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the

property owned at the time; its value and income-producing capacity, if any, and *whether it was accumulated or acquired before or after the marriage;* and such other matters as may be material.

Corbett [v. Corbett, 2001 ND 113, 628 N.W.2d 312], at ¶ 12 (quoting *Freed v. Freed,* 454 N.W.2d 516, 520 n. 3 (N.D. 1990)).

*Gleich v. Gleich,* 2001 ND 185, ¶ 6, 636 N.W.2d 418 (emphasis added).

[¶ 26] Here, because of the district court's clearly erroneous finding on a *Ruff–Fischer* guideline, I would reverse and remand for the district court to properly consider the guideline factors.

[¶ 27]   DALE V. SANDSTROM.