Filed 2/3/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 18

Larry Ulsaker, Plaintiff, Appellant, and Cross-Appellee

v.

C. True Bright White, Defendant, Appellee, and Cross-Appellant

No. 20080093

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Zane Anderson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Mary E. Nordsven, Hardy, Maus & Nordsven, P.C., 137 1st Avenue West, P.O. Box 570, Dickinson, ND 58602-0570, for plaintiff, appellant, and cross-

appellee.

Camille O’Kara Hann, Hann Law PLLC, 18 - 1st Street West, P.O. Box 802, Dickinson, ND 58602-0802, for defendant, appellee, and cross-appellant.

Ulsaker v. White

No. 20080093

Crothers, Justice.

[¶1] Larry Ulsaker appeals and C. True Bright White cross-appeals from the district court’s judgment dividing the parties’ marital property, awarding White a cash payment and denying White’s request for attorney’s fees.  We affirm the district court’s property distribution award, cash payment schedule and denial of attorney’s fees. 

I

[¶2] This case is on appeal for the second time.  A full statement of the facts can be found at 
Ulsaker v. White
, 2006 ND 133, 717 N.W.2d 567.  Ulsaker and White were married in October 1988, and Ulsaker filed for divorce in June 2003.  Both Ulsaker and White were previously married, and each has an advanced degree.  The parties did not have a prenuptial agreement, but during the marriage they kept their assets separate except for one joint checking account.  Prior to the marriage, Ulsaker owned (a) 240 acres in Wilkin County, Minnesota, (b) 137 acres of farmland in Ottertail County, Minnesota, (c) a home in Columbia, Missouri, and (d) significant savings in his investment account.  White also brought property into the marriage, including (a) 80 acres in Stillwater, Oklahoma, (b) property in Buena Vista, Colorado, and (c) a house in Denver which she sold and invested the proceeds in annuities.

[¶3] During the marriage, the parties purchased additional property, including the Buckhorn Ranch located in Medora.  Ulsaker inherited assets from his mother, Mabel, while the parties were married.  

[¶4] The first trial was held in February 2004 and resulted in an absolute decree of divorce and distribution of real property in Battle Lake, Minnesota, to Ulsaker.  On May 12, 2005, the district court entered Supplemental Findings of Fact, Conclusions of Law and Order for Judgment of Divorce, awarding certain real and personal property to each party and ordering Ulsaker to pay White a $150,000 cash payment within sixty days of entry of the judgment and $1,000 per month spousal support until White dies or remarries.  White appealed the district court’s judgment.  In June 2006, this Court remanded the case for a new trial concluding the district court misapplied the law and failed to explain the substantial disparity in the distribution of the marital property. 

[¶5] At the time of the first trial in February 2004, Ulsaker’s prime account had a balance of $2,594,767.  Three years later, at the second trial in December 2007, Ulsaker’s prime account had been reduced by $1,765,571, leaving a balance of $828,696.  Since the first trial, each party has managed their assets independently and has purchased additional property.  White purchased additional real estate in Dickinson, and Ulsaker made gifts to his children and grandchildren, traveled extensively, bought expensive coins for his coin collection and built a log cabin on the Buckhorn ranch. 

[¶6] After the second trial, the district court determined the parties’ marital estate totaled $5,849,207.  The court awarded Ulsaker property worth $4,096,760 and White items totaling $1,752,447.  In order to equalize the division of the marital estate, the court ordered Ulsaker to pay $1,170,000 to White.  The district court denied White’s request for spousal support, attorney’s fees, and costs and disbursements. 

II

[¶7] Ulsaker argues the district court clearly erred in distributing the parties’ marital property equally.  Ulsaker claims the district court erred in finding that the length of the marriage and that his dissipation of marital assets favored an equal distribution of the marital property. 

[¶8] Section 14-05-24(1), N.D.C.C., requires the district court to make an equitable distribution of the property of the divorcing parties.  “We review a district court’s determination regarding the distribution of property as a finding of fact, and we will not reverse unless the district court’s findings are clearly erroneous.”  
Wold v. Wold
, 2008 ND 14, ¶ 6, 744 N.W.2d 541 (quoting 
Donlin v. Donlin
, 2007 ND 5, ¶ 10, 725 N.W.2d 905).

“A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made.”

Lorenz v. Lorenz
, 2007 ND 49, ¶ 5, 729 N.W.2d 692 (citing 
Kostelecky v. Kostelecky
, 2006 ND 120, ¶ 8, 714 N.W.2d 845).  

[¶9] “We have said that a property division need not be equal to be equitable, but a substantial disparity must be explained.”  
Dvorak v. Dvorak
, 2006 ND 171, ¶ 19, 719 N.W.2d 362 (citing 
Amsbaugh v. Amsbaugh
, 2004 ND 11, ¶ 23, 673 N.W.2d 601).  “[A] trial court must start with a presumption that all property held by either party whether held jointly or individually is to be considered marital property.  The trial court must then determine the total value of the marital estate in order to make an equitable division of property.”  
Hitz v. Hitz
, 2008 ND 58, ¶ 11, 746 N.W.2d 732 (quoting 
Ulsaker
, 2006 ND 133, ¶ 13, 717 N.W.2d 567).  When the court distributes the marital estate, it must consider the 
Ruff-Fischer
 guidelines.  
Wagner v. Wagner
, 2007 ND 101, ¶ 9, 733 N.W.2d 593; 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966); 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952).  The 
Ruff-Fischer
 guidelines require the court to consider:

“the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.  The trial court is not required to make specific findings, but it must specify a rationale for its determination.”  

Hitz
, at ¶ 11 (quoting 
Bladow v. Bladow
, 2003 ND 123, ¶ 7, 665 N.W.2d 724).  “The district court is not required to make specific findings on each 
Ruff-Fischer
 factor, but must explain the rationale for its decision.”  
Wagner
, at ¶ 10.

[¶10] The district court made findings on each 
Ruff-Fischer
 factor.  The court found the factors favoring an unequal distribution of the marital estate in Ulsaker’s favor included the origin of the property, the conduct of the parties during the marriage, gifts to White, health and physical condition and the tax consequences.  The district court also found several factors favoring White receiving more than fifty percent of the marital estate, including the duration of the marriage, economic fault and dissipation of assets in violation of the restraining provisions of the summons, ranch appreciation, financial circumstances as shown by the property owned and its income producing capacity and the earning ability of the parties.  The court found the factors favoring neither party included the age of the parties, the non-economic fault and the parties’ station in life. 

[¶11] After making findings on each 
Ruff-Fischer
 factor, the district court concluded that the 
Ruff-Fischer
 factors “roughly offset each other and tend to support an approximately equal distribution of the marital estate.”  In explaining why the court believed an equal distribution of the marital estate was appropriate, it stated: 

“The main reason for the Court’s decision is that [Ulsaker’s] argument for an unequal division is offset by the length of the marriage and the fact that [Ulsaker] has enjoyed the benefit of the income from his properties and [Ulsaker] has dissipated some of his inheritance by living a lavish lifestyle since the original trial including building a new log cabin home, extensive travel, expensive gifts to his children and grandchildren, and apparently making some bad investments.  Whatever merit [Ulsaker’s] arguments for an unequal division may have had they now seem completely offset by the factors favoring [White’s] position.”

[¶12] “North Dakota law does not mandate a set formula or method to determine how marital property is to be divided; rather, the division is based on the particular circumstances of each case.”  
Wagner
, 2007 ND 101, ¶ 11, 733 N.W.2d 593.  “We have recognized that a long-term marriage supports an equal distribution of property.”  
Id.
  However, no bright-line rule exists to determine whether a marriage should be considered short-or long-term.  
Hitz
, 2008 ND 58, ¶ 16, 746 N.W.2d 732; 
see
 
Wagner
, at ¶ 16 (finding a 12-year marriage was a long-term marriage); 
Wold
, 2008 ND 14, ¶ 17, 744 N.W.2d 541 (finding a 15-year marriage was a long-term marriage).  However, the duration of the marriage is only one of the 
Ruff-Fischer
 guidelines to be considered in the distribution of marital property.  
Lill v. Lill
, 520 N.W.2d 855, 857 (N.D. 1994). 

[¶13] Ulsaker contends the court erred in finding the duration of the parties’ marriage favored an equal division of the marital estate.  Ulsaker asserts the evidence establishes the parties’ marriage was short-term, not long-term, because the parties resided together for only twelve years, the marriage occurred late in the parties’ lives, it was not the parties first marriage, and except for a joint checking account, the parties kept their finances separate.

[¶14] In determining the parties’ marriage was long-term, the district court relied on Ulsaker’s testimony that the parties were “pretty much separated by 2002 which would mean they lived together for 13 or 14 years.”  The district court also stated that to make the marriage work, White had given up opportunities, including her business in Colorado, to allow Ulsaker to pursue his interests.  The district court’s finding the duration of the marriage supported an equal division of the marital assets was not clearly erroneous because the evidence supports the court’s finding the parties’ marriage qualified as a “long-term marriage.”

[¶15] Ulsaker also argues the district court clearly erred in finding he dissipated marital assets.  Ulsaker asserts the difference from the first trial until the second trial in the balance of his prime account was the result of proceeds being converted into assets, of enhancements made to Buckhorn Ranch and of normal expenses occurred in everyday life. 

[¶16] The district court found Ulsaker’s dissipation of marital assets also supported an equal distribution or a division that would give White more than half of the marital estate.  In finding Ulsaker dissipated marital assets, the court stated that “at the time of the first trial, [Ulsaker’s] prime account had a value of $2,594,767.  At the time of the retrial [Ulsaker’s] prime account had a value of $828,696.  This reflects a decrease in value of $1,765,571.”  We have long recognized a party’s dissipation of marital assets is a relevant factor for the district court to consider when dividing the marital estate.  
Horner v. Horner
, 2004 ND 165, ¶ 16, 686 N.W.2d 131.  

[¶17] The value of the marital estate normally is calculated at the time of divorce. 
Grinaker v. Grinaker
, 553 N.W.2d 204, 208-09 (N.D. 1996).  The parties were divorced in February 2004 but on remand the district court proceeded without objection from the parties to value the estate as of the second trial.  At the retrial, Ulsaker acknowledged spending a significant amount of money, but denied intentionally dissipating marital assets.  The record reflects Ulsaker was unable to explain where the approximately one million dollars went, but the evidence shows that he (a) gifted about $197,000 to each of his children, (b) paid taxes, (c) purchased coins, (d) bought a thousand ounce brick of silver, (e) made some bad investments, (f) built a new log cabin on the ranch and (g) traveled to New Zealand, Russia, Canada and California.  The district court’s finding that Ulsaker dissipated marital assets is supported by the evidence and therefore, is not clearly erroneous.  Under the posture of this case, we conclude the district court’s property distribution of the marital estate is not clearly erroneous because the evidence supports the court’s findings that the duration of the parties’ marriage and Ulsaker’s dissipation of marital assets favor an equal division of the marital estate. 

III

[¶18] Ulsaker argues the district court’s order for cash payments is clearly erroneous because it is too aggressive and fails to account for the adverse tax consequences he would face under the court’s cash payment plan.  Ulsaker claims the court could have avoided the tax consequences if it had divided his IRA, his prime account and/or his cooperative equities equally instead of requiring him to make three cash payments within a three-year time frame.  We have recognized a trial court should consider tax consequences when determining divorce transactions.  
Neubauer v. Neubauer
, 524 N.W.2d 593, 595 (N.D. 1994).  

[¶19] Contrary to Ulsaker’s argument, the district court did consider Ulsaker’s possible tax consequences, stating in its Memorandum Order that:

“[d]espite the complete lack of evidence presented by either party, in the Court’s view it is proper to take judicial notice of the fact that if [White] is awarded a significant cash property settlement [Ulsaker] will have to sell something to fund the settlement and it is reasonably certain that [Ulsaker] will incur some tax consequences as a result.”

Because Ulsaker failed to introduce any evidence regarding the tax consequences he would face if a cash settlement was awarded, the district court was left to speculate.  We have stated that “phantom tax consequences are not a relevant basis on which to divide marital property.”  
Linrud v. Linrud
, 1998 ND 55, ¶ 15, 574 N.W.2d 875.  Further, Ulsaker conceded and his Rule 8.3 statement demonstrates each party expressed a desire to be awarded his or her own assets.  The district court awarded the parties exactly what they requested; therefore, Ulsaker cannot now complain that the district court should have split his IRA, prime account or cooperative equities.  The district court’s cash award was not clearly erroneous because Ulsaker failed to present evidence about the tax consequences he would face.  

[¶20] The district court’s cash payment plan requires Ulsaker to pay White $410,000 “immediately upon entry of judgment and in no event later than 60 days after entry of judgment.  The remaining balance will be due in two equal annual amortized installments.”  Ulsaker argues this payment plan is too aggressive because it will require him to liquidate some of his assets to pay White on time. 

[¶21] We have stated that “[w]hen a court grants a money judgment to achieve an equitable distribution, it should set the term for payment of the cash judgment for as short a period as possible without imposing a serious hardship on the party responsible to pay the judgment.”  
Horner
, 2004 ND 165, ¶ 19, 686 N.W.2d 131 (citing 
Hendrickson v. Hendrickson
, 553 N.W.2d 215, 220 (N.D. 1996)).  The district court’s cash payment schedule is not too aggressive.  The court stated it gave Ulsaker 60 days before the first payment was due “to marshal his resources and plan and decide how best to pay the cash property settlement.”  The court explained it chose a shorter period of time to have the entire cash payment paid, three years, because of the age of the parties.  Ulsaker will be 74 years old and White will be 73 years old when the last payment is made.  The payment schedule is not clearly erroneous because it gave Ulsaker a reasonable amount of time to pay the cash settlement, considering his wealth and the parties’ age.

IV

[¶22] White argues the district court abused its discretion in denying her request for attorney’s fees because her monthly income is a fraction of Ulsaker’s.  White concedes she has a substantial amount of money in her Edward Jones retirement account, but argues Ulsaker’s funds are more liquid and “he is in a better position to contribute to a portion of [her] legal fees.”

[¶23] “Under N.D.C.C. § 14-05-23, the district court in divorce proceedings, has discretion to award attorney’s fees.”  
Wagner
, 2007 ND 101, ¶ 22, 733 N.W.2d 593.  “The court’s award of attorney’s fees is within its sound discretion and will not be set aside on appeal absent an abuse of that discretion.”  
Id.
  “A district court abuses its discretion if it misinterprets or misapplies the law.”  
Christian v. Christian
, 2007 ND 196, ¶ 16, 742 N.W.2d 819.  We have provided guidance to district courts when deciding whether to award attorney fees.

“In deciding whether to award attorney fees in a divorce action, the trial court must balance one [party’s] needs against the other [party’s] ability to pay.  The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case.  An award of attorney fees requires specific findings supported by evidence of the parties’ financial conditions and needs.” 

Id.
 (quoting 
Reiser v. Reiser
, 2001 ND 6, ¶ 15, 621 N.W.2d 348).  

[¶24] The district court stated attorney’s fees were not appropriate in this case because “both parties have ample resources and neither has shown that the actions of the other warrant an award of attorney’s fees.”  The record establishes White’s retirement account has a balance of over one million dollars and she was awarded a $1,170,000 cash payment in the divorce proceedings.  Thus, White does not need assistance to pay her attorney’s fees.  We conclude the district court did not abuse its discretion in denying White’s request for attorney’s fees.

V

[¶25] We affirm the district court’s judgment distributing the parties’ property, awarding White a cash payment and denying White’s request for attorney’s fees.

[¶26] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

I concur in the result.

   Dale V. Sandstrom

VandeWalle, Chief Justice, concurring specially.

[¶27] Because of the amount of marital property to be divided in this case, the tax consequences of the division are of particular concern.  They should be a concern to the parties as well as to the trial court since the greater the tax consequences the less property there is to be divided.  I agree with the majority opinion that when the court is presented with no evidence of tax consequences it can only acknowledge, as did the court in this instance, that while there will be tax consequences the court cannot speculate as to what the consequences might be.

[¶28] Nevertheless, there is something of a catch-22 situation that arises for the parties as well as the trial court.  The trial court cannot announce its decision on division of the marital property until all the evidence has been heard, and the parties cannot present precise evidence on the tax consequences of that division until after the trial court announces its decision.  However, a party should be aware that the trial court might announce a property division different than what the party has proposed and seek to introduce evidence of potential tax consequences where, such as here, the trial court orders a monetary payment and it is necessary for the party to sell property to make that payment. I doubt the revelation that a party is aware the trial court might reach a different result than that proposed by the party will be fatal to the party’s case.  A party might also ask leave of the court to reserve the right to introduce evidence of the tax consequences once the decision dividing the property has been announced or, after the decision has been announced, ask the trial court to consider its decision in light of the tax consequences.  My review of the record in this case indicates that neither party made any effort to bring the tax consequences to the attention of the trial court. 

[¶29] Although I believe the parties as well as the trial court could have made an effort to consider the direct tax consequences, they did not do so and on the state of the record in this case, I agree that the judgment of the district court should be affirmed.  

[¶30] Gerald W. VandeWalle, C.J.